# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

     Plaintiff,

vs.                                  No. CR 15-4268 JB

ANGEL DELEON, JOE LAWRENCE
GALLEGOS, EDWARD TROUP, a.k.a.
"Huero Troup," LEONARD LUJAN,
BILLY GARCIA, a.k.a. "Wild Bill,"
EUGENE MARTINEZ, a.k.a. "Little
Guero," ALLEN PATTERSON,
CHRISTOPHER CHAVEZ, a.k.a. "Critter,"
JAVIER ALONSO, a.k.a. "Wineo,"
ARTURO ARNULFO GARCIA, a.k.a.
"Shotgun," BENJAMIN CLARK, a.k.a.
"Cyclone," RUBEN HERNANDEZ;
JERRY ARMENTA, a.k.a. "Creeper,"
JERRY MONTOYA, a.k.a. "Boxer,"
MARIO RODRIGUEZ, a.k.a. "Blue,"
TIMOTHY MARTINEZ, a.k.a. "Red,"
MAURICIO VARELA, a.k.a. "Archie,"
a.k.a. "Hog Nuts," DANIEL Sanchez, a.k.a.
"Dan Dan," GERALD ARCHULETA, a.k.a.
"Styx," a.k.a. "Grandma," CONRAD
VILLEGAS, a.k.a. "Chitmon," ANTHONY
RAY BACA, a.k.a. "Pup," ROBERT
MARTINEZ, a.k.a. "Baby Rob," ROY
PAUL MARTINEZ, a.k.a. "Shadow,"
CHRISTOPHER GARCIA, CARLOS
HERRERA, a.k.a. "Lazy," RUDY PEREZ,
a.k.a. "Ru Dog," ANDREW GALLEGOS,
a.k.a. "Smiley," SANTOS GONZALEZ;
PAUL RIVERA, SHAUNA GUTIERREZ,
and BRANDY RODRIGUEZ,

     Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on: (i) the United States' Motion *In Limine*,

filed March 26, 2018 (Doc. 1977)("First MIL"); and (ii) the Motion in Limine to Admit Out-of-

Court Statements Made by Adrian Burns (Doc. 1978)("Second MIL").  The primary issues are: (i) whether the finding that no probable existed to prosecute Defendants Joe Gallegos and Andrew Gallegos for Adrian Burns' murder that the Honorable Jim Naranjo, Jr., Socorro County Magistrate Judge,[1] made on December 6, 2012 constitutes admissible evidence in this case, a federal prosecution of the Burns murder as a Violent Crime in Aid of Racketeering under 18 U.S.C. § 1959("VICAR"); and (ii) whether a statement that Burns made to this girlfriend, Amber Sutton, shortly before his death, stating that he was going to J. Gallegos' residence to collect a drug debt and to sell heroin is admissible hearsay as a statement of the declarant's then-existing state of mind.  The Court concludes that: (i) the Magistrate Judge's probable-cause determination is relevant but inadmissible; and (ii) Burns' statement to Sutton is admissible as a statement of the declarant's then-existing state of mind, specifically his plan.

In the First MIL, the Plaintiff United States of America argues that the Magistrate Judge's probable-cause determination is inadmissible, because it has no tendency to make a fact of consequence more or less probable.  See First MIL at 4 (citing Fed. R. Evid. 401).  The United States also argues that the Magistrate Judge's probable-cause determination is inadmissible, because the danger that the probable-cause determination will confuse or mislead the jury substantially outweighs the determination's probative value.  See First MIL at 4 (citing Fed. R. Evid. 403).  The United States bases its arguments on assertions that: (i) after the probable-cause

---

[1]Magistrate Judge Naranjo is not a lawyer.  Outside of Bernalillo and Dona Ana Counties, New Mexico Magistrate Judges need only a high school diploma or General Equivalence Degree.  See N.M. Stat. Ann. § 35-2-1 ("No person is eligible for election or appointment to the office of magistrate unless he has graduated from high school or has attained the equivalent of a high school education . . . .").  See also id. ("In magistrate districts with a population of more than two hundred thousand persons in the last federal decennial census, no person is eligible for election or appointment to the office of magistrate unless he is a member of the bar of this state and licensed to practice law in this state . . . .").

determination, the investigation into Burns' death continued and uncovered additional evidence, <u>see</u> First MIL at 3; (ii) "a federal grand jury has found probable cause on the charges and evidence," First MIL at 4; and (iii) neither the United States nor the Defendants know what evidence was presented to Magistrate Judge Naranjo, <u>see</u> First MIL at 4.

In the Second MIL, the United States argues that Burns' statement to Sutton that "he was on his way to the residence of Joe Gallegos to collect a drug debt and to sell heroin," is a statement of Burns' then-existing state of mind, specifically his plan. Second MIL at 1. It follows, according to the United States, that Burns' statement is admissible for its truth under rule 803(3) of the Federal Rules of Evidence. <u>See</u> Second MIL at 2. The United States contends, alternatively, that Burns' statements is admissible to show its effect on Sutton, <u>i.e.</u>, that it caused her to begin searching for Burns, "which started with her looking for the Gallegos' home." Second MIL at 3.

J. Gallegos filed a response to the First MIL. <u>See</u> Response to Motion in Limine [Doc. 1977] at 1, filed April 3, 2018 (Doc. 2031)("First Response"). J. Gallegos argues that the United States' argument "that there is no evidence to show what was presented to the Socorro County Magistrate" is "self serving," because "[t]hey, the government[,] lost," <u>i.e.</u>, failed to preserve, that evidence. First Response at 2. J. Gallegos adds:

> Probable cause in this case is an issue that was determined by Magistrate Jim Navarro and the government, in the same position as the State, is collaterally estopped from arguing otherwise. This does not preclude their case as it is based on a different theory, but they should be subject to cross on this fact.

First Response at 2-3.

A. Gallegos filed a response to the Second MIL. <u>See</u> Defendant's Response to Government's Motion in Limine to Admit Out of Court Statements Made by Adrian Burns at 1,

filed April 3, 2018 (Doc. 2050)("Second Response").  A. Gallegos argues that Burns' statement

to Sutton is inadmissible hearsay, because rule 803(3) of the Federal Rules of Evidence renders

statements of a declarant's then-existing state of mind admissible because of circumstantial

guarantees of reliability that attend those statements.  See Second Response ¶ 3, at 2.

A. Gallegos contends that no such guarantees attend Burns' statements.  See Second Response

¶ 4, at 2.  A. Gallegos also argues that, even if statements regarding Burns' plan to go to

J. Gallegos' residence are admissible under rule 803(3), statements regarding the reason for that

visit -- that J. Gallegos owed Burns a drug debt -- are not admissible under rule 803(3), because

that rule does not permit statements of belief to be introduced to prove the fact believed.  See

First Response ¶ 8, at 3.  Further, according to A. Gallegos, "[t]he Government's stated intent to

use the statement to show why Amber Sutton searched for the decedent in the manner she did is

not relevant unless and until Defendant makes an issue of the reasonableness of Ms. Sutton's

investigation."  Second Response ¶ 5, at 2.  In addition to hearsay arguments, A. Gallegos

contends that "the existence of a [drug] debt and [Burns'] allegation that Mr. Gallegos was

involved in the sale of narcotics, is . . . unfairly prejudicial and should be excluded under Rule

403."  Second Response ¶ 6, at 2.  A. Gallegos concludes by noting:

> On March 14, 2018, Ms. Armijo read the statement to the court, stating that
> Adrian Burns told Dan Orendorff (a/k/a "Sleepy") that Joe (and/or Andrew)
> Gallegos owed him money and that Sleepy should no longer do business with
> him.  No hearsay exception applies to allow the Government to introduce these
> statements for the truth of its allegation that Defendant owed a drug debt.

Second Response ¶ 10, at 3.

The Court concludes that Magistrate Judge Naranjo's probable-cause determination is

relevant but inadmissible.  Rule 401 of the Federal Rules of Evidence sets a very low bar for

relevance; any tendency to make a fact of consequence more or less relevant suffices.  See Fed.

R. Evid. 401. That a Magistrate Judge found that no probable cause existed to prosecute J. Gallegos and A. Gallegos for Burns' murder makes it less likely that the Gallegos brothers killed Burns, so the probable-cause determination is relevant.

Rule 403 states that the court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of" unfair prejudice, confusing the issues, or wasting time. Fed. R. Evid. 403. Unfair prejudice "means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Fed. R. Evid. 403 advisory committee notes. When the jury trusts in the judgment of another factfinder instead of forming its own judgment based on the evidence presented, it employs an improper -- albeit unemotional -- basis for decision. See United States v. Young, 470 U.S. 1, 18-19 (1985)(Burger, C.J.).

> The prosecutor's vouching for the credibility of witnesses and expressing his personal opinion concerning the guilt of the accused pose two dangers: such comments can convey the impression that evidence not presented to the jury, but known to the prosecutor, supports the charges against the defendant and can thus jeopardize the defendant's right to be tried solely on the basis of the evidence presented to the jury; and the prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence.

United States v. Young, 470 U.S. at 18-19.

> The Court would be concerned . . . that the jury would decide that DeSantis is disabled not upon its own judgment and understanding of the evidence, but on the fact that an ostensibly smart person looked at some evidence -- quite possibly evidence that is not presented to the jury -- and came to that conclusion.

 De Santis v. Napolitano, 2010 WL 2292592, at *24 (D.N.M. May 26, 2010)(Browning, J.) Thus, the danger that the jury will defer to Magistrate Judge Naranjo's probable-cause determination is a danger of unfair prejudice.

Further, there is no way for the jury to determine what evidence was presented to Magistrate Judge Naranjo, so the jury would need to evaluate the resulting probable-cause determination in the abstract. Conducting such an evaluation requires knowledge regarding the intricacies of New Mexico criminal practice and procedure and the qualifications of New Mexico magistrate judges. Even the Court had to educate itself regarding New Mexico preliminary hearings to determine probable cause, and it was surprised to learn that most New Mexico Magistrate Judges are not lawyers, see supra note 1, but "[t]he Rules of Evidence apply" at the preliminary hearings that those Magistrate Judges conduct, N.M. R. Ann. 6-202. Educating a jury on those matters threatens to turn a trial into a law school seminar, which would waste time and potentially confuse the issues. Accordingly, the Court excludes the probable-cause determination under rule 403 of the Federal Rules of Evidence.

The Court does not agree with J. Gallegos' argument regarding collateral estoppel and failure to preserve evidence. See First Response at 2-3. For one thing, collateral estoppel would apply against the United States only if it had been a party to the state court proceeding. It was not. Additionally, the United States had no obligation to preserve the evidence presented to the Magistrate Judge Naranjo; nothing in the record indicates that the United States ever possessed that evidence. Even if the United States possessed that evidence, it was not obliged to preserve that evidence unless the evidence "both possess[ed] an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to

obtain comparable evidence by other reasonably available means." California v. Trombetta, 467

U.S. 479, 489 (1984).[2]

The Court concludes that Burns' statement to Sutton, which the Second MIL describes, is

admissible for its truth under rule 803(3) of the Federal Rules of Evidence.  According to that

rule,

> [a] statement of the declarant's then-existing state of mind (such as motive, intent,
> or plan) or emotional, sensory, or physical condition (such as mental feeling, pain,
> or bodily health), but not including a statement of memory or belief to prove the
> fact remembered or believed unless it relates to the validity or terms of the
> declarant's will.

Fed. R. Evid. 803(3).  Burns' statement describes where he planned to go -- J. Gallegos'

residence -- and what he planned to do there -- collect a drug debt and sell heroin, see Second

MIL at 1, so it is admissible for its truth as a statement of the declarant's then-existing plan, see

Fed. R. Evid. 803(3).[3]  That statement -- indicating that Burns planned to confront J. Gallegos

about a drug debt on the night he died -- is both relevant and highly probative, because the

United States' theory of the case is that J. Gallegos and A. Gallegos murdered Burns because of

the drug dispute between J. Gallegos and Burns.  Accordingly, the statement is admissible

notwithstanding rule 403 of the Federal Rules of Evidence.

---

[2]That Magistrate Judge Naranjo did not find probable cause existed does not mean that
the evidence presented to him was exculpatory; it indicates only that he determined that the
evidence presented was not sufficiently inculpatory to justify a murder prosecution.

[3]The United States indicated orally that, in its opinion, this statement is also admissible as
a declaration against penal interest under rule 804(b)(3) of the Federal Rules of Evidence,
because it indicates that Burns was engaged in drug dealing.  The Court is not, however,
convinced that Burns' statement has "so great a tendency . . . to expose the declarant to . . .
criminal liability" that a reasonable person in Burns' position would have made the statement
"only if the person believed it to be true."  Fed. R. Evid. 804(b)(3).  That Burns made the
statement to his girlfriend indicates that a reasonable person in Burns' position would not expect
law enforcement to learn of the statement, and Burns' statement tends to expose him to criminal
liability only if law enforcement becomes aware of that statement.

Finally, the additional Burns statements that A. Gallegos identifies -- that Burns told Orendorff that J. Gallegos owed him money and that Orendorff should not do business with him -- are not admissible for their truth.  <u>See</u> Second Response ¶ 10, at 3-4.  They are, however, admissible to show that Burns was bad-mouthing and disrespecting J. Gallegos such that J. Gallegos had to retaliate violently to preserve his standing in the SNM, <u>i.e.</u>, that J. Gallegos killed Burns "for the purpose of . . . maintaining or increasing position in an enterprise engaged in racketeering activity."  18 U.S.C. § 1959(a).  J. Gallegos is, however, entitled to a limiting instruction informing the jury that they can use this Burns statement for the fact that it was made and not for its truth.

**IT IS ORDERED** that (i) the United States' Motion *In Limine*, filed March 26, 2018 (Doc. 1977), is granted; and (ii) Motion in Limine to Admit Out-of-Court Statements Made by Adrian Burns (Doc. 1978), is granted.

                                                  _____
UNITED STATES DISTRICT JUDGE

*Counsel:*

John C. Anderson
  United States Attorney
Maria Ysabel Armijo
Randy M. Castellano
Matthew Beck
  Assistant United States Attorneys
United States Attorney's Office
Las Cruces, New Mexico

      *Attorneys for the Plaintiff*

Richard Sindel
Sindel, Sindel & Noble, P.C.
Clayton, Missouri

--and--

Brock Benjamin
Benjamin Law Firm
El Paso, Texas

      *Attorneys for Defendant Joe Lawrence Gallegos*

Patrick J. Burke
Patrick J. Burke, P.C.
Denver, Colorado

--and--

Cori Ann Harbour-Valdez
The Harbour Law Firm, P.C.
El Paso, Texas

      *Attorneys for Defendant Edward Troup*

Russel Dean Clark
Las Cruces, New Mexico

      *Attorney for Defendant Leonard Lujan*

James A. Castle
Castle & Castle, P.C.
Denver, Colorado

--and--

Robert R. Cooper
Albuquerque, New Mexico

     *Attorneys for Defendant Billy Garcia*

Douglas E. Couleur
Douglas E. Couleur, P.A.
Santa Fe, New Mexico

     *Attorneys for Defendant Eugene Martinez*

Phillip A. Linder
The Linder Firm
Dallas, Texas

--and--

Jeffrey C. Lahann
Las Cruces, New Mexico

     *Attorneys for Defendant Allen Patterson*

John L. Granberg
Granberg Law Office
El Paso, Texas

--and--

Eduardo Solis
El Paso, Texas

     *Attorneys for Defendant Christopher Chavez*

Nathan D. Chambers
Nathan D. Chambers, LLC
Denver Colorado

--and--

Noel Orquiz
Deming, New Mexico

     *Attorneys for Defendant Javier Alonso*

Scott Moran Davidson
Albuquerque, New Mexico

--and--

Billy R. Blackburn
Albuquerque, New Mexico

     *Attorneys for Defendant Arturo Arnulfo Garcia*

Stephen E. Hosford
Stephen E. Hosford, P.C.
Arrey, New Mexico

--and--

Jerry Daniel Herrera
Albuquerque, New Mexico

     *Attorneys for Defendant Benjamin Clark*

Pedro Pineda
Las Cruces, New Mexico

     *Attorney for Defendant Ruben Hernandez*

Gary Mitchell
Mitchell Law Office
Ruidoso, New Mexico

     *Attorney for Defendant Jerry Armenta*

Larry A. Hammond
Osborn Maledon, P.A.
Phoenix, Arizona

--and--

Margaret Strickland
McGraw & Strickland
Las Cruces, New Mexico

     *Attorneys for Defendant Jerry Montoya*

Steven M. Potolsky
Jacksonville Beach, Florida

--and--

Santiago D. Hernandez
Law Office of Santiago D. Hernandez
El Paso, Texas

     *Attorneys for Defendant Mario Rodriguez*

Jacqueline K. Walsh
Walsh & Larranaga
Seattle, Washington

--and--

Ray Velarde
El Paso, Texas

     *Attorneys for Defendant Timothy Martinez*

Joe Spencer
El Paso, Texas

--and--

Mary Stillinger
El Paso, Texas

     *Attorneys for Defendant Mauricio Varela*

Amy E. Jacks
Law Office of Amy E. Jacks
Los Angeles, California

--and--

Richard Jewkes
El Paso, Texas

     *Attorneys for Defendant Daniel Sanchez*

George A. Harrison
Las Cruces, New Mexico

     *Attorney for Defendant Gerald Archuleta*

B.J. Crow
Crow Law Firm
Roswell, New Mexico

     *Attorney for Defendant Conrad Villegas*

Theresa M. Duncan
Duncan, Earnest, LLC
Albuquerque, New Mexico

--and--

Marc M. Lowry
Rothstein Donatelli, LLP
Albuquerque, New Mexico

     *Attorneys for Defendant Anthony Ray Baca*

Charles J. McElhinney
McElhinney Law Firm, LLC
Las Cruces, New Mexico

     *Attorney for Defendant Robert Martinez*

Marcia J. Milner
Las Cruces, New Mexico

     *Attorney for Defendant Roy Paul Martinez*

Christopher W. Adams
Charleston, South Carolina

--and--

Amy Sirignano
Law Office of Amy Sirignano, P.C.
Albuquerque, New Mexico

     *Attorneys for Defendant Christopher Garcia*

William R. Maynard
El Paso, Texas

--and--

Carey Corlew Bhalla
Law Office of Carey C. Bhalla, LLC
Albuquerque, New Mexico

     *Attorneys for Defendant Carlos Herrera*

Justine Fox-Young
Albuquerque, New Mexico

--and--

Ryan J. Villa
Albuquerque, New Mexico

     *Attorneys for Defendant Rudy Perez*

Lisa Torraco
Albuquerque, New Mexico

--and--

Donavon A. Roberts
Albuquerque, New Mexico

     *Attorneys for Defendant Andrew Gallegos*

Erlinda O. Johnson
Law Office of Erlinda Ocampo Johnson, LLC
Albuquerque, New Mexico

    *Attorneys for Defendant Santos Gonzalez*

Angela Arellanes
Albuquerque, New Mexico

    *Attorneys for Defendant Shauna Gutierrez*

Jerry A. Walz
Walz and Associates
Albuquerque, New Mexico

    *Attorneys for Defendant Brandy Rodriguez*