# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                   No. CR 15-4268 JB

ANGEL DELEON, JOE LAWRENCE
GALLEGOS, EDWARD TROUP, a.k.a.
"Huero Troup," LEONARD LUJAN,
BILLY GARCIA, a.k.a. "Wild Bill,"
EUGENE MARTINEZ, a.k.a. "Little
Guero," ALLEN PATTERSON,
CHRISTOPHER CHAVEZ, a.k.a. "Critter,"
JAVIER ALONSO, a.k.a. "Wineo,"
ARTURO ARNULFO GARCIA, a.k.a.
"Shotgun," BENJAMIN CLARK, a.k.a.
"Cyclone," RUBEN HERNANDEZ;
JERRY ARMENTA, a.k.a. "Creeper,"
JERRY MONTOYA, a.k.a. "Boxer,"
MARIO RODRIGUEZ, a.k.a. "Blue,"
TIMOTHY MARTINEZ, a.k.a. "Red,"
MAURICIO VARELA, a.k.a. "Archie,"
a.k.a. "Hog Nuts," DANIEL Sanchez, a.k.a.
"Dan Dan," GERALD ARCHULETA, a.k.a.
"Styx," a.k.a. "Grandma," CONRAD
VILLEGAS, a.k.a. "Chitmon," ANTHONY
RAY BACA, a.k.a. "Pup," ROBERT
MARTINEZ, a.k.a. "Baby Rob," ROY
PAUL MARTINEZ, a.k.a. "Shadow,"
CHRISTOPHER GARCIA, CARLOS
HERRERA, a.k.a. "Lazy," RUDY PEREZ,
a.k.a. "Ru Dog," ANDREW GALLEGOS,
a.k.a. "Smiley," SANTOS GONZALEZ,
PAUL RIVERA, SHAUNA GUTIERREZ,
and BRANDY RODRIGUEZ,

      Defendants

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on Defendant Billy Garcia's opening statement

at trial on April 12, 2018.  During that opening statement, B. Garcia displayed a PowerPoint

Slide regarding Defendant Robert Martinez'[1] murder conviction:



Shortly after B. Garcia displayed that slide, the United States asked the Court if it could approach the bench.  Out of the jury's earshot, the United States argued that the details of the offense underlying R. Martinez' murder conviction -- as opposed to the conviction itself -- are not admissible to show R. Martinez' character for truthfulness under rule 609 of the Federal Rules of Evidence.  B. Garcia replied that he was not trying to use the facts underlying R. Martinez' murder conviction under Fed. R. Evid. 609.  See Realtime Trial Transcript at 837:22-24 (held April 12, 2018)(Castle)("Tr.")("[W]e're offering it not because we're saying it's a [conviction.] [I]n fact the Court will see there is nothing about his conviction.").[2]  B. Garcia argued, instead,

---

[1] While R. Martinez is a Defendant, he has pled guilty and will testify as part of the United States' case in chief.  See Sealed Plea Agreement at 1, filed September 22, 2016 (Doc. 716); United States' Sealed Witness List Trial II at 4, filed January 22, 2018 (Doc. 1676).

[2] The Court's citations to the trial transcript refer to the court reporter's realtime, unedited version.  Any final transcript will contain different page and/or line numbers.

that he was offering the details that his PowerPoint slide contains to attack R. Martinez'
character for truthfulness:

> We're talking about the level of dishonesty and this talks about his character for
> dishonesty, how much he's manipulated evidence in that case to try [to] hide his
> own guilt. That's what we're saying Mr. Martinez is doing in this case is he's
> manipulating evidence in other words his testimony . . . to get out of his
> responsibility. So this is a man who . . . takes his own clothes off and puts the
> victim's clothes on then puts it all in a car then torches the car to get away with
> the murder just like I think the Government is going to argue happened in the
> Burns matter, and show consciousness of guilt but this is a person who has shown
> a history of trying to get away with his crimes like the crime against Mr.
> Santistevan and Mr. Marcantel by trying to fool everyone and so we believe it's
> evidence of mis[conduct and] dishonesty.

Tr. at 837:24-838:19 (Castle). The Court gave an oral ruling ordering B. Garcia to take down the

slide, but permitting B. Garcia to use R. Martinez' murder conviction and not the facts

underlying that conviction contained on B. Garcia's PowerPoint slide, because "that would be

much more information than we would normally give the jury to evaluate [under rule 609,]

which is usually [just] the fact of conviction and what it is and maybe the date or something like

th[at]." Realtime Transcript of Hearing (held April 12, 2018)(Court).

Under rule 608, Garcia can attack R. Martinez' credibility with reputation and opinion

testimony regarding R. Martinez' character for truthfulness, see Fed. R. Evid. 608(a), but

"extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order

to attack or support the witness's character," Fed. R. Evid. 608(b). Notwithstanding that

extrinsic evidence prohibition, the Court "may, on cross examination, allow" specific instances

of a witness' conduct "to be inquired into if they are probative of the character for truthfulness or

untruthfulness." Fed. R. Evid. 608(b)(2). "Such inquiry is within the discretion of the trial court

subject to rule 403." United States v. Morales-Quinones, 812 F.2d 604, 613 (10th Cir. 1987).

Even when the Court permits inquiry under rule 608(b), however, witnesses may invoke their

privilege against self-incrimination.  See Fed. R. Evid. 608(b)("By testifying on another matter, a witness does not waive any privilege against self-incrimination for testimony that relates only to the witness's character for truthfulness.").  Further, parties asking questions about a witness' specific instances of conduct probative of truthfulness cannot evade rule 608's extrinsic-evidence restrictions by using extrinsic evidence to contradict the answers they receive, because extrinsic evidence is not ordinarily admissible to impeach a witness by contradiction on a collateral matter.[3]  See United States v. Warledo ("It is fundamental that it is not permissible to impeach a

---

[3]At common law, a court could not "with propriety permit a witness to be examined first, and contradicted afterwards, on a point which is merely and purely collateral, as for instance as to his personal character, and as to having committed any particular act."  Attorney-General v. Hitchcock, 154 Eng. Rep. 38, 43 (1847).

> The reason why a party is obliged to take the answer of a witness is, that if he were permitted to go into it, it is only justice to allow the witness to call other evidence in support of the testimony he has given, and as those witnesses might be cross-examined as to their conduct, such a course would be productive of endless collateral issues. Suppose, for instance, witness A. is accused of having committed some offence; witness B. is called to prove it, when, on witness B's cross-examination, he is asked whether he has not made some statement, to prove which witness C. is called, so that it would be necessary to try all those issues, before one step could be obtained towards the adjudication of the particular case before the Court. On the contrary, if the answer be taken as given, if the witness speaks falsely he may be indicted for perjury. That is the proper remedy. Then in the next place, in my opinion, when the question is not relevant, strictly speaking, to the issue, but tending to contradict the witness, his answer must be taken, although it tends to shew that he, in that particular instance, speaks falsely, and although it is not altogether immaterial to the matter in issue, for the sake of the general public convenience; for great inconvenience would follow from a continual course of those sorts of cross-examinations which would be let in in the case of a witness being called for the purposes of contradiction.  I think those are the rules by which these cases have always been governed, and the application of which is easy and short.

Attorney-General v. Hitchcock, 154 Eng. Rep. at 44.  The Federal Rules of Evidence do not codify the common law rule that extrinsic evidence is not admissible to contradict a witness on a collateral matter, but the rule survives as an application of rule 403 of the Federal Rules of Evidence.  See United States v. Walker, 930 F.2d 789 (10th Cir. 1991)("[I]t is well settled that it

witness on a collateral or irrelevant matter elicited on cross-examination."). <u>See also</u> <u>United States v. Walker</u>, 930 F.2d 789 (10th Cir. 1991)("A matter has been held to be collateral if it

---

is not improper for the trial judge to limit impeachment evidence on matters that are deemed collateral or irrelevant. . . . This rule stems from the trial judge's power under Fed. R. Evid. 403 to exclude evidence which is more prejudicial, misleading, or confusing than probative"). <u>See also</u> <u>United States v. Tarantino</u>, 846 F.2d 1384, 1409 (D.C. Cir. 1988)(describing the "'specific contradiction' rule, which states that 'a witness may not be impeached by extrinsic evidence (contradiction by another witness or evidence) on a collateral issue,'" as "a particular instance of the trial court's general power under" rule 403 (quoting <u>United States v. Pugh</u>, 436 F.2d 222, 225 (D.C. Cir. 1970))).

The United States Court of Appeals for the Tenth Circuit has carved out an exception to the general rule against using extrinsic evidence to contradict a witness on a collateral matter such that, "when a defendant makes a false statement during direct testimony, the prosecution is allowed to prove, either through cross-examination or by rebuttal witnesses, that the defendant lied as to that fact. . . . This is so even if the evidence elicited by the prosecution ordinarily might be collateral or otherwise inadmissible." <u>United States v. Crockett</u>, 435 F.3d 1305, 1313 (10th Cir. 2006)(citing <u>United States v. Walder</u>, 347 U.S. 62, 65 (1954)). <u>United States v. Crockett</u>'s reference to rebuttal witnesses is both dicta -- the United States did not call a rebuttal witness to impeach a testifying defendant on a collateral matter -- and a departure from other Tenth Circuit precedent permitting a testifying defendant to be impeached by contradiction on a collateral matter, "[w]ithout resorting to any extrinsic evidence." <u>Mason v. Oklahoma Turnpike Authority</u>, 115 F.3d 1442, 1456 (10th Cir. 1997). <u>See United States v. Reschner</u>, 802 F.2d 373, 383 (10th Cir. 1986)("Here the prosecution did not use extrinsic evidence to attack the witness' credibility, but merely tried to elicit an admission that he had testified falsely during direct examination. The trial court clearly had discretion to allow such questioning . . . ."). <u>See also</u> <u>United States v. Crockett</u>, 435 F.3d at 1313 (purporting to apply <u>Mason v. Oklahoma Turnpike Authority</u> and <u>United States v. Greschner</u>). <u>Walder v. United States</u> is the only authority that <u>United States v. Crockett</u> cites for the proposition that calling rebuttal witnesses to contradict a testifying defendant's direct examination statement regarding a collateral matter is permissible. <u>See United States v. Crockett</u>, 435 F.3d at 1313. The Supreme Court of the United States of America, in <u>Walder v. United States</u>, did not address contradiction on a collateral matter. Instead, <u>Walder v. United States</u> determined that the United States could -- in a prosecution for "purchasing and possessing one grain of heroin" -- call a rebuttal witness to contradict a defendant's direct-examination assertion that he had never possessed or dealt narcotics, even though an unlawful search rendered that testimony inadmissible in the United States' case in chief. <u>Walder v. United States</u>, 347 U.S. at 62-63, 65. Whether a defendant ever possessed narcotics is not a collateral matter in a heroin-possession prosecution. Consequently, <u>Walder v. United States</u> does not create or apply the exception to the rule against introducing extrinsic evidence for impeachment on a collateral matter that <u>United States v. Crockett</u> describes. The Court thus concludes that the Tenth Circuit in <u>United States v. Crockett</u>: (i) would have been explicit if it intended to carve out a new exception to a centuries-old evidentiary rule; and (ii) thought -- erroneously, in the Court's view -- that it was apply existing evidence law.

could not have been introduced in evidence for any purpose independent of the impeachment.").

In contrast, rule 609 of the Federal Rules of Evidence permits extrinsic evidence when "attacking a witness's character for truthfulness by evidence of a criminal conviction." Fed. R. Evid. 609(a). Extrinsic evidence of a criminal conviction, however, is not the same thing as extrinsic evidence of the facts underlying a conviction, and rule 609 permits the former and not the latter. See United States v. Albers, 93 F.3d 1469, 1480 (10th Cir. 1996)(stating that rule 609 evidence "'should be confined to a showing of the essential facts of convictions, the nature of the crimes, and the punishment'" (quoting United States v. Wolf, 561 F.2d 1376, 1381 (10th Cir. 1977))).

The United States Courts of Appeal disagree regarding whether introducing evidence of a witness' criminal conviction under rule 609 precludes rule 608(b) inquiry, on cross examination, regarding the specific instance of conduct that produced the conviction if that conduct is probative of the witness' character for truthfulness. For example, the United States Court of Appeals for the Third Circuit, while reviewing a case where the trial court admitted a witness' embezzlement conviction under rule 609, indicated that, "were we acting as the trial court in the case at bar," it would have permitted questions, under rule 608, "about the amount of money stolen or the lengths to which [the witness] went to misappropriate these funds." Elcock v. Kmart Corp., 233 F.3d 734, 753 (3d Cir. 2000). The Third Circuit reasoned that:

> A juror could rationally conclude that one who embezzles a million dollars from the Government over a long period of time has a worse character for veracity than a person who steals five dollars once. . . . To the extent that they paint [the witness]'s crimes in a more accurate and complete manner (as the District Judge did in his sentencing opinion), questions relating to the facts underlying the pleas are also more probative of untruthfulness than a bland reference to a United States Code section or a recitation of the crime's elements.

Elcock v. Kmart Corp., 233 F.3d at 753. While the Third Circuit concluded that the trial court

did not abuse its discretion under rules 403 and 611 of the Federal Rules of Evidence by reaching

a contrary conclusion, that the Third Circuit would have permitted questions under rule 608

notwithstanding rule 609 evidence indicates that such questions are permissible.  See Elcock v.

Kmart Corp., 233 F.3d at 753-54.

The United States Court of Appeals for the Tenth Circuit takes a different approach.  The

Tenth Circuit reads rule 608(b) to permit "cross-examining [a witness] about specific instances

of conduct **not resulting in conviction** if such conduct is probative of the witness' character for

truthfulness or untruthfulness."  United States v. Morales-Quinones, 812 F.2d 604, 613 (10th Cir.

1987)(emphasis added).  When conduct results in a conviction and evidence of that conviction is

introduced -- even if that introduction occurs during a non-hostile witness' direct examination

and not cross-examination -- "only the prior conviction, its general nature, and punishment of

felony range were fair game for testing the [witness'] credibility"; further cross examination

delving into the facts underlying the conviction is impermissible even if no extrinsic evidence

regarding those facts is introduced.  United States v. Albers, 93 F.3d 1469, 1480 (10th Cir.

1996).

In United States v. Albers, the Tenth Circuit concluded that a trial court erred, albeit

harmlessly, by permitting the United States to cross examine a testifying defendant about the

facts underlying his felony conviction after the defendant testified, during his direct examination,

that he had been convicted of grand theft property in trust and served a thirty-three month

sentence.  See 93 F.3d at 1479.  The only distinction that rule 609 draws between testifying

criminal defendants and other witnesses is that a special balancing test determines whether

evidence of a testifying defendant's felony conviction is admissible notwithstanding its

prejudicial effect.  Compare Fed. R. Evid. 609(a)(1)(A)(ordinary witnesses), with Fed. R. Evid.

609(a)(1)(B)(testifying criminal defendants).  See also United States v. Lopez-Medina, 596 F.3d at 738 ("Though the questioning here involved a witness, not the accused, we see no abuse of discretion in the court's decision to prohibit Lopez–Medina from eliciting the *specific facts and circumstances* underlying [the witness'] conviction." (emphasis in original)); United States v. Howell, 285 F.3d 1263, 1267 (10th Cir. 2002)("[W]e see no reason why we should interpret Rule 609(a)(1) to permit introduction of evidence of the nature of an accused's prior felony conviction, but not evidence of the nature of a witness's prior felony conviction.").[4]

---

[4]The Tenth Circuit's United States v. Albers decision binds the Court, but if the Court were writing on a blank slate, it would take an approach closer to the Third Circuit's approach in Elcock v. Kmart Corp. for several reasons.  First, the rule 608(b)'s and 609's text supports the Third Circuit's approach.  See Fed. R. Evid. 608(b).  Rule 609 provides rules that "apply to attacking a witness's character for truthfulness by evidence of a criminal conviction," Fed. R. Evid. 609(a), so the expressio unius est exclusio alterius (the expression of one is the exclusion of another) canon of construction indicates that rule 609 does not provide rules that apply to attacking a witness' character for truthfulness by other evidence.  When rule 609 does not apply, rule 608(b) governs whether evidence regarding specific instances of a witness' conduct is admissible to attack a witness' character for truthfulness.  See Fed. R. Evid. 608(b)("Except for a criminal conviction under Rule 609 . . . .").  By their terms, rule 608(b) and rule 609 are, thus, mutually exclusive and collectively exhaustive.  Those rules' text is ambiguous regarding which rule applies to the facts underlying a witness' criminal conviction -- "evidence of a criminal conviction," Fed. R. Evid. 609, and "a criminal conviction under Rule 609," Fed. R. Evid. 608(b), might or might not encompass those facts -- but neither rule calls for the Tenth Circuit's categorical bar on cross examination regarding those facts.  If rule 609 applies, then evidence is admissible if it satisfies a balancing test weighing the evidence's probative value against its unfair prejudice.  See Fed. R. Evid. 609(a)-(b)(articulating three different balancing tests and specifying the conditions under which each test applies).  Alternatively, if rule 608(b) applies, extrinsic evidence is inadmissible, but the trial court may permit inquiry on cross examination subject to rule 403 balancing.  See Fed. R. Evid. 608(b).

Second, the Third Circuit's approach is consistent with the policy considerations underlying rules 608(b) and 609.

Both rules are concerned with a particular form of impeachment: proving that a witness has a character for untruthfulness.  Both rules permit, with some limitations, an inquiry into specific conduct in the witness's past when offered to prove that such conduct has some bearing on the witness's character for untruthfulness. . . . .

_____

> One reason for the difference in treatment is that the drafters of the rules, and Congress, felt that the exclusion of extrinsic evidence found in Rule 608(b) should not apply where the impeachment was with prior convictions. This is because a conviction, unlike a bad act, can be proved easily if the witness denies it. There is no risk of a mini-trial on a collateral issue. Also, the denial of a bad act may result from inadvertence or dispute as to its occurrence; but neither concern is pertinent when it comes to a conviction.

> The more important reason for differential treatment is that prior convictions were thought to be more serious, and more probative of a propensity to lie on the stand, than other bad acts. Whether this is true or not, it is clear that Congress believed it to be so.

Stephen A. Saltzburg et al., Federal Rules of Evidence Manual § 609.02[1] (11th ed. 2017). The purpose of rule 608(b)'s extrinsic evidence ban is "'to avoid holding mini-trials on irrelevant or collateral matters.'" Stephen A. Saltzburg et al., supra § 608.02[7] (quoting Deary v. City of Gloucester, 9 F.3d 197 (1st Cir. 1993)).

> All that Rule 608(b) does is to prevent the focus of a trial from turning from the merits of a dispute to the issue of whether a witness committed a particular act, the only relevance of which is that, if it was committed by the witness, that fact might affect the jury's assessment of credibility.

Stephen A. Saltzburg et al., supra § 608.02[10]. That a specific instance of a witness' conduct produced a criminal conviction does not make it more likely that asking cross examination questions about that conduct will produce a miniature trial on a collateral matter.

Third, the Tenth Circuit's rule produces the incongruous result that rule 608(b) inquiry is completely forbidden if a witness was convicted, whereas rule 608(b) inquiry is permissible, subject to rule 403 balancing, if the witness was acquitted. Compare United States v. Schwab, 886 F.2d 509, 513 (2d Cir. 1989)(concluding that a trial court abused its discretion under rule 403 when it permitted rule 608(b) inquiry into a witness' conduct that produced an acquittal), with United States v. Lopez-Medina, 596 F.3d 716, 737-38 (10th Cir. 2010)(concluding that a trial judge did not need to balance probative value and unfair prejudice under rule 403 before prohibiting inquiry into the facts underlying a witness' criminal conviction). The Court can divine no sound reason to immunize from inquiry a witness who was found guilty without providing the same level of protection to a witness who was tried and acquitted.

Fourth, policy concerns regarding the cumulative prejudicial effect of rule 608(b) inquiry into conduct that has resulted in a criminal conviction, which several United States Courts of Appeal and commentators have found compelling, do not justify United States v. Albers' prohibition on such inquiry. Professor Stephen A. Saltzburg articulates those concerns: "A party attacking a witness with a conviction has already done significant damage. Admitting the underlying conduct appears to be piling on, and operates as little more than an evasion of the careful proof limitations imposed by Rule 609." Stephen A. Saltzburg et al., Federal Rules of Evidence Manual § 609.02[6]. See United States v. Albers, 93 F.3d at 1479 ("[T]he defendant was entitled to the protection of the rule that only the prior conviction, its general nature, and

punishment of felony range were fair game for testing the defendant's credibility."). The United States Court of Appeals for the Ninth Circuit articulated similar concerns:

> The government also argues on policy grounds that it does not make sense to bar inquiry into dishonest acts just because a witness was eventually convicted for them. But that argument ignores that evidence of a prior conviction for dishonest acts can be far more prejudicial to a defendant than evidence of dishonest acts that have not been held to violate the law. Under the government's interpretation, a bad act resulting in a conviction would be, in a sense, counted twice -- once by presenting the bad act itself and once by presenting the conviction that flowed from it. The risk of unfair prejudice or undue emphasis is the reason why Rule 609 and its related case law carefully guide the admission of prior convictions and their underlying facts.

United States v. Osazuwa, 564 F.3d 1169, 1174-75 (9th Cir. 2009).

Concerns regarding cumulative prejudicial effect from introducing both a criminal conviction under rule 609 and permitting inquiry regarding the underlying facts under rule 608(b) are legitimate, but United States v. Albers' categorical rule preventing the introduction of rule 608(b) and rule 609 evidence is not an appropriate response. For one thing, inquiry under 608(b) is always subject to rule 403, which permits a trial court to avoid throwing the proverbial baby out with the bath water by making particularized and case-specific determinations regarding "unfair prejudice" and "needlessly presenting cumulative evidence." Fed. R. Evid. 403.

Additionally, even when it is not appropriate to attack a witness' character for truthfulness by both introducing conviction evidence under rule 609 and inquiring about the underlying facts under rule 608(b), the party seeking to impeach a witness should be able to choose between those two alternatives. The admonition that "[a] syllogism is not a story, and a naked proposition in a courtroom may be no match for the robust evidence that would be used to prove it" is true for impeachment evidence as well as evidence bearing directly on guilt or innocence. Old Chief v. United States, 519 U.S. 172, 189 (1997). If a party would rather present robust impeachment evidence via rule 608(b) inquiry into a specific instance of conduct -- subject to rule 608(b)'s extrinsic evidence prohibition -- instead of introducing sanitized evidence of a resulting conviction under rule 609, via extrinsic evidence or otherwise, there is no sound reason to forbid that tactical choice, which would be subject to the trial court's rule 403 balancing. See Old Chief v. United States, 519 U.S. at 184 ("[A] reading of the companions to Rule 403, and of the commentaries that went with them to Congress, makes it clear that what counts as the Rule 403 'probative value' of an item of evidence . . . may be calculated by comparing evidentiary alternatives." (quoting Fed. R. Evid. 403)). The Tenth Circuit's pronouncements, when taken at face value, prohibit rule 608(b) inquiry into conduct that produces a conviction no matter whether evidence of that conviction is introduced under rule 609. See United States v. Morales-Quinones, 812 F.2d at 613 ("Under Fed. R. Evid. 608(b) a defendant may impeach a Government witness by cross-examining him about specific instances of conduct not resulting in conviction if such conduct is probative of the witness' character for truthfulness or untruthfulness.").

Consequently, United States v. Albers means that, if the party calling a witness brings out that witness' criminal conviction during direct examination, cross examination regarding the facts underlying that conviction is not permissible notwithstanding rule 608(b) of the Federal Rules of Evidence.[5]

---

Even if Tenth Circuit precedent, correctly understood, permits rule 608(b) inquiry into a specific instance of conduct resulting in conviction as long as evidence of the conviction is not introduced, the choice between offering impeachment evidence under rule 608(b) or 609 belongs, as a practical matter, to the party who calls the witness. Rule 607 permits parties to impeach their own witnesses. See Fed. R. Crim. P. 607 ("Any party, including the party that called the witness, may attack the witness's credibility."). Consequently, the party who calls a witness can, during direct examination, introduce evidence of the witness' conviction, under rule 609, and thereby foreclose a rule 608(b) inquiry into the facts underlying the conviction, even if those facts are far more probative vis-à-vis the witness' character for truthfulness than the bare fact of conviction.

[5]In United States v. Albers, the Tenth Circuit worried about testifying defendants in particular and the prospect that they would have to endure questioning about their convictions on direct examination and then more questioning about the facts underlying those convictions on cross examination. See 93 F.3d at 1480 ("[T]he defendant was entitled to the protection of the rule that only the prior conviction, its general nature, and punishment of felony range were fair game for testing the defendant's credibility."). Commentators have long been concerned that introducing a testifying defendant's felony convictions tells the fact finder relatively little about that defendant's character for truthfulness, but discourages defendants from taking the stand for fear that their prior conviction will be admitted under rule 609. See Stephen A. Saltzburg et al., supra § 609.02[4] ("We believe that, while it is important for the jury to get a sense of the witness's character for truthfulness, it is also important that the rules on impeachment not unduly discourage parties from calling witnesses -- especially criminal defendant-witnesses -- to the stand."). The Court is sympathetic to the academic literature's criticism of rule 609, but Congress wrote rule 609 as a political compromise that is more favorable to testifying defendants than the common-law rule. See Fed. R. Evid. 609 advisory committee note ("The weight of traditional authority has been to allow use of felonies generally, without regard to the nature of the particular offense, and of *crimen falsi* without regard to the grade of the offense."); id. ("The proposed rule incorporates certain basic safeguards, in terms applicable to all witnesses but of particular significance to the accused who elects to testify."). In a democracy, such political compromises are perfectly honorable, and the Court should respect what the political branches have decided.

On the other hand, the Tenth Circuit's and Professor Saltzburg's concern for criminal defendants, which the Court shares, ultimately hurts the Defendants in this case. United States v. Albers' prohibition on rule 608(b) inquiry regarding the facts and circumstances underlying a witness' criminal convictions hamstrings B. Garcia's ability to attack the character for

Nothing in B. Garcia's recent brief, Brief Regarding Permissible Evidence Under Fed. R. Evid. 404, 405, 608, and 609, filed April 15, 2018 (Doc. 2115)("Brief"), changes the Court's analysis. B. Garcia asserts that the "Court has found that the standards for admission of evidence to show conduct in conformity with prior conduct should be relaxed when the defendant attempts to offer rule 404(b) evidence concerning a witness." Brief ¶ 2, at 1-2 (citing United States v. Ballou, 59 F. Supp. 3d  1038, 1062 (D.N.M. 2014)(Browning, J.)).[6] B. Garcia also asserts that, "[r]ule 404(b) speaks to the admission of other crimes wrongs or acts against 'a person,' and does not specify that the 'person' must be a criminal defendant," so "most courts hold that defendants have the same right to offer Rule 404(b) evidence as prosecutors." Brief ¶ 4, at 2 (quoting Fed. R. R. Evid. 404(b)). B. Garcia then describes several United States Courts of

---

truthfulness of the United States' witnesses. The Court thinks the better approach is to avoid reading hard-and-fast prohibitions -- which are completely absent from the text, see supra n.3 -- into rules 608 and 609. The Court can use rule 403 to exclude evidence to keep the gory details underlying a testifying defendant's convictions and to allow the Defendants leeway, under rule 403, to attack their accusers' character for truthfulness.

[6]In United States v. Ballou, the Court determined that evidence about a witness' prior conduct was admissible under rule 404(b) of the Federal Rules of Evidence, when the defendant offered the evidence, even though that evidence "would not pass muster under a traditional rule 404(b) analysis, in which the United States seeks to admit prior bad acts of a criminal defendant." 59 F. Supp. 3d at 1068. The Court reasoned that a "'lower standard'" applies to "a nonparty's prior bad acts that a criminal defendant seeks to admit," evidence about a witness, because "'prejudice to the defendant is not a factor.'" United States v. Ballou, 59 F. Supp. 3d at 1064 (quoting United States v. Montelongo, 420 F.3d 1169, 1175 (10th Cir. 2005)). Whether rule 404(b) evidence prejudices a defendant affects that evidence's admissibility, because rule 404(b) evidence -- offered for a permissible purpose -- is admissible unless its unfair prejudice substantially outweighs its probative value under rule 403. See United States v. Tan, 254 F.3d 1204, 1208 (10th Cir. 2001)(reasoning that, when "other act evidence is . . . offered for a proper purpose," it "may be excluded only under Rule 403."). The lower standard that United States v. Ballou discusses is not, strictly speaking, a different legal standard; rule 403 governs rule 404(b) evidence's admissibility when it is offered for a permissible purpose no matter which party offers the evidence. That lower standard is, instead, an acknowledgement that rule 403 balancing produces more permissive results when rule 404(b) evidence presents a nonparty's "crime, wrong, or other act." Fed. R. Evid. 404(b)(1).

Appeal cases concluding that rule 404(b) evidence about a witness' prior conduct was admissible for a purpose other than establishing that the witness acted in conformity with character on a particular occasion.  See Brief ¶¶ 5-6, at 2-3 (citing United States v. Stephens, 365 F.3d 967 (11th Cir. 2004); United States v. McClure, 546 F.2d 670 (5th Cir. 1977)).  The cases that B. Garcia cites, however, address whether and under what circumstances a defendant can offer evidence for a non-character purpose under rule 404(b), but B. Garcia seeks to offer character evidence -- specifically character for truthfulness evidence -- under rule 608(b).  Accordingly, the Court concludes that those cases do not apply to the issue before it.

B. Garcia contends that, "[i]f a prior event resulting in a conviction involved a dishonest act, such as fraud or deceit, then it may be admissible under rule 608(b)."  Brief ¶ 12, at 5 (citing United States v. Chapman, No. CR 14-1065, 2015 WL 4042177 (D.N.M. June 29, 2015)(Browning, J.)).  It follows, according to B. Garcia, that "a defendant may choose to cross-examine a witness, not on the basis that a witness' conduct resulted in a conviction under Fed. R. Evid 609, but rather, as a specific instance of conduct in order to attack or support the witness's character for truthfulness."  Brief ¶ 12, at 5.[7]  The Court, however, does not make that logical leap.  That a specific instance of a witness' conduct must be probative of the witness' truthfulness for rule 608(b) inquiry to be permissible does not mean that 608(b) inquiry is automatically permissible just because a specific instance of a witness' conduct is probative of truthfulness.

---

[7]In United States v. Chapman, the Court observed that, "[i]f a theft involved a dishonest act, such as fraud or deceit, then it may be admissible under rule 608(b)."  2015 WL 4042177, at *25.  That observation flows from rule 608(b)'s statement that inquiry into specific instances of a witness' conduct on cross examination is permissible only if the instances "are probative of the character for truthfulness or untruthfulness."  Fed. R. Evid. 608(b).  United States v. Chapman analyzed an alleged theft that did not result in a criminal conviction, "which means rule 608, and not rule 609, governs the admissibility of evidence of the incident."  2015 WL 4042177, at *24.

B. Garcia then attempts to distinguish <u>United States v. Albers</u>, because "the issue was what a prosecutor could elicit about a ***defendant's*** prior conviction."  Brief ¶ 13, at 6 (emphasis in the original).  B. Garcia asserts that "[t]he defense can find no case extending the [<u>United States v. Albers</u>] rule to defense witnesses."  Brief ¶ 13, at 6.  The Court, however, can find such authority.  <u>See</u> <u>United States v. Lopez-Medina</u>, 596 F.3d at 738 ("Though the questioning here involved a witness, not the accused, we see no abuse of discretion in the court's decision to prohibit Lopez-Medina from eliciting the *specific facts and circumstances* underlying [the witness'] conviction."  (emphasis in the original)).

B. Garcia suggests that limiting his ability to cross examine the United States' witnesses regarding the facts underlying their criminal convictions violates the Confrontation Clause of the Sixth Amendment to the Constitution of the United States of America.  <u>See</u> Brief ¶ 16, at 7-8.  B. Garcia adds:

> The government has put the character of each of their cooperators at issue.  They introduce "truthfulness" provisions of the plea agreements.  They have the witnesses indicate they have provided all details of their prior criminal behavior and have taken responsibility.  In essence, the government opens the door to character evidence in regard to these witnesses by creating an impression that these cooperators are truthful and haven chosen a new honest path in life.  Under these circumstances, the character of the witnesses is very much in issue and is a large part of the government's presentation and claims.  The rejection of such is, similarly, an essential portion of the defense in this case.

Brief ¶ 15, at 7.  Similarly, B. Garcia argues that "many of the government's witnesses are former or current inmates who claim that they have turned a new leaf and are testifying in part as a way to redeem their souls.  Evidence that disputes the moral high ground that these witnesses are claiming must be wide and deep."  Brief ¶ 22, at 10.  Finally, B. Garcia avers that the "special characteristics of informant and accomplice witnesses" indicate both that the jurors "are to take special care in assessing their credibility," and that "the defense should be similarly given

broad and searching cross examination to expose problems with the witness's credibility."  Brief ¶ 21, at 9-10.

B. Garcia's arguments do not persuade the Court.   While restrictions on cross examination raise Confrontation Clause problems when they "'effectively emasculate the right of cross-examination itself,'" limiting B. Garcia's ability to inquire regarding specific instances of witness conduct that resulted in a conviction and are only probative as character evidence does not produce such a result.  United States v. Gutierrez de Lopez, 761 F.3d 1123, 1140 (10th Cir. 2014).   The Court's ruling regarding rules 608 and 609 impact the Defendants' ability to impeach witnesses with character for truthfulness evidence, but they remain free to impeach witnesses by evidence of bias, by prior inconsistent statements, by contradiction on a non-collateral matter, or otherwise.   They can also make rule 608(b) inquiries regarding specific instances of conduct that did not result in a conviction.  Accordingly, the Court concludes that B. Garcia and the other Defendants can adequately impeach the United States' witnesses.

**IT IS ORDERED** that, if Defendant Robert Martinez testifies, during direct examination, about his murder conviction and the sentence he received, then Defendant Billy Garcia cannot introduce the factual information underlying that conviction which his opening statement PowerPoint slide describes.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Fred Federici
   Attorney for the United States
      Acting Under Authority Conferred by 28 USC § 515
Albuquerque, New Mexico

--and--

Maria Ysabel Armijo
Randy M. Castellano
Matthew Beck
   Assistant United States Attorneys
United States Attorney's Office
Las Cruces, New Mexico

   *Attorneys for the Plaintiff*

Richard Sindel
Sindel, Sindel & Noble, P.C.
Clayton, Missouri

--and--

Brock Benjamin
Benjamin Law Firm
El Paso, Texas

   *Attorneys for Defendant Joe Lawrence Gallegos*

Patrick J. Burke
Patrick J. Burke, P.C.
Denver, Colorado

--and--

Cori Ann Harbour-Valdez
The Harbour Law Firm, P.C.
El Paso, Texas

   *Attorneys for Defendant Edward Troup*

Russel Dean Clark
Las Cruces, New Mexico

     *Attorney for Defendant Leonard Lujan*

James A. Castle
Castle & Castle, P.C.
Denver, Colorado

--and--

Robert R. Cooper
Albuquerque, New Mexico

     *Attorneys for Defendant Billy Garcia*

Douglas E. Couleur
Douglas E. Couleur, P.A.
Santa Fe, New Mexico

     *Attorneys for Defendant Eugene Martinez*

Joseph E. Shattuck
Marco & Shattuck
Albuquerque, New Mexico

--and--

Jeffrey C. Lahann
Las Cruces, New Mexico

     *Attorneys for Defendant Allen Patterson*

John L. Granberg
Granberg Law Office
El Paso, Texas

--and--

Eduardo Solis
El Paso, Texas

     *Attorneys for Defendant Christopher Chavez*

Nathan D. Chambers
Nathan D. Chambers, LLC
Denver Colorado

--and--

Noel Orquiz
Deming, New Mexico

     *Attorneys for Defendant Javier Alonso*

Scott Moran Davidson
Albuquerque, New Mexico

--and--

Billy R. Blackburn
Albuquerque, New Mexico

     *Attorneys for Defendant Arturo Arnulfo Garcia*

Stephen E. Hosford
Stephen E. Hosford, P.C.
Arrey, New Mexico

--and--

Jerry Daniel Herrera
Albuquerque, New Mexico

     *Attorneys for Defendant Benjamin Clark*

Pedro Pineda
Las Cruces, New Mexico

     *Attorney for Defendant Ruben Hernandez*

Gary Mitchell
Mitchell Law Office
Ruidoso, New Mexico

     *Attorney for Defendant Jerry Armenta*

Larry A. Hammond
Osborn Maledon, P.A.
Phoenix, Arizona

--and--

Margaret Strickland
McGraw & Strickland
Las Cruces, New Mexico

    *Attorneys for Defendant Jerry Montoya*

Steven M. Potolsky
Jacksonville Beach, Florida

--and--

Santiago D. Hernandez
Law Office of Santiago D. Hernandez
El Paso, Texas

    *Attorneys for Defendant Mario Rodriguez*

Jacqueline K. Walsh
Walsh & Larranaga
Seattle, Washington

--and--

Ray Velarde
El Paso, Texas

    *Attorneys for Defendant Timothy Martinez*

Joe Spencer
El Paso, Texas

--and--

Mary Stillinger
El Paso, Texas

    *Attorneys for Defendant Mauricio Varela*

Amy E. Jacks
Law Office of Amy E. Jacks
Los Angeles, California

--and--

Richard Jewkes
El Paso, Texas

    *Attorneys for Defendant Daniel Sanchez*

George A. Harrison
Las Cruces, New Mexico

    *Attorney for Defendant Gerald Archuleta*

B.J. Crow
Crow Law Firm
Roswell, New Mexico

    *Attorney for Defendant Conrad Villegas*

Theresa M. Duncan
Duncan, Earnest, LLC
Albuquerque, New Mexico

--and--

Marc M. Lowry
Rothstein Donatelli, LLP
Albuquerque, New Mexico

    *Attorneys for Defendant Anthony Ray Baca*

Charles J. McElhinney
McElhinney Law Firm, LLC
Las Cruces, New Mexico

    *Attorney for Defendant Robert Martinez*

Marcia J. Milner
Las Cruces, New Mexico

    *Attorney for Defendant Roy Paul Martinez*

Christopher W. Adams
Charleston, South Carolina

--and--

Amy Sirignano
Law Office of Amy Sirignano, P.C.
Albuquerque, New Mexico

    *Attorneys for Defendant Christopher Garcia*

William R. Maynard
El Paso, Texas

--and--

Carey Corlew Bhalla
Law Office of Carey C. Bhalla, LLC
Albuquerque, New Mexico

    *Attorneys for Defendant Carlos Herrera*

Justine Fox-Young
Albuquerque, New Mexico

--and--

Ryan J. Villa
Albuquerque, New Mexico

    *Attorneys for Defendant Rudy Perez*

Lisa Torraco
Albuquerque, New Mexico

--and--

Donavon A. Roberts
Albuquerque, New Mexico

    *Attorneys for Defendant Andrew Gallegos*

Erlinda O. Johnson
Law Office of Erlinda Ocampo Johnson, LLC
Albuquerque, New Mexico

    *Attorneys for Defendant Santos Gonzalez*

Angela Arellanes
Albuquerque, New Mexico

    *Attorneys for Defendant Shauna Gutierrez*

Jerry A. Walz
Walz and Associates
Albuquerque, New Mexico

    *Attorneys for Defendant Brandy Rodriguez*