# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

     Plaintiff,

vs.                                     No. CR 15-4268 JB

ANGEL DELEON, JOE LAWRENCE
GALLEGOS, EDWARD TROUP, a.k.a. "Huero
Troup," LEONARD LUJAN, BILLY GARCIA,
a.k.a. "Wild Bill," EUGENE MARTINEZ, a.k.a.
"Little Guero," ALLEN PATTERSON,
CHRISTOPHER CHAVEZ, a.k.a. "Critter,"
JAVIER ALONSO, a.k.a. "Wineo," ARTURO
ARNULFO GARCIA, a.k.a. "Shotgun,"
BENJAMIN CLARK, a.k.a. "Cyclone," RUBEN
HERNANDEZ; JERRY ARMENTA, a.k.a.
"Creeper," JERRY MONTOYA, a.k.a. "Boxer,"
MARIO RODRIGUEZ, a.k.a. "Blue," TIMOTHY
MARTINEZ, a.k.a. "Red," MAURICIO VARELA,
a.k.a. "Archie," a.k.a. "Hog Nuts," DANIEL
SANCHEZ, a.k.a. "Dan," GERALD
ARCHULETA, a.k.a. "Styx," a.k.a. "Grandma,"
CONRAD VILLEGAS, a.k.a. "Chitmon,"
ANTHONY RAY BACA, a.k.a. "Pup," ROBERT
MARTINEZ, a.k.a. "Baby Rob," ROY PAUL
MARTINEZ, a.k.a. "Shadow," CHRISTOPHER
GARCIA, CARLOS HERRERA, a.k.a. "Lazy,"
RUDY PEREZ, a.k.a. "Ru Dog," ANDREW
GALLEGOS, a.k.a. "Smiley," SANTOS
GONZALEZ; PAUL RIVERA, SHAUNA
GUTIERREZ, and BRANDY RODRIGUEZ,

     Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on the United States' Motion in Limine

Regarding Non-Testimonial Evidence and Request for Pre-Trial Ruling, filed August 31, 2021

(Doc. 3414)("Motion").  The Court held a hearing on the Motion on September 7, 2021.  The

primary issue is whether Joe Lawrence Gallegos' statement to Benjamin Clark in 2004 that

Defendant Angel DeLeon held Frank Castillo down so tightly that it made it easy for Gallegos to kill Castillo is admissible at trial against DeLeon, because it is (i) nontestimonial, and (ii) a statement against penal interest.   The Court concludes that: (i) Gallegos' statement is nontestimonial, because its primary purpose was not to establish or prove past events potentially relevant to later criminal prosecution; and (ii) Gallegos' statement is admissible only in part, because its reference to DeLeon it is non-self-inculpatory.   The Court, therefore, will grant the Motion in part and deny the Motion in part.

## FACTUAL BACKGROUND

The Court takes its background facts from the Second Superseding Indictment, filed March 9, 2017 (Doc. 947)("Indictment").   The background facts are largely unchanged from those facts that the Court provides in its Memorandum Opinion and Order, 423 F. Supp. 3d 1210, filed November 19, 2019 (Doc. 1585).   The Court does not set forth these facts as findings or the truth. The Court recognizes that the factual background largely reflects plaintiff United States of America's version of events and that the Defendants are all presumed innocent.   The Court takes the particular facts relevant to this case from the Motion, the Defendant Angel DeLeon's Response in Opposition to the United States' Motion in Limine Regarding Non-Testimonial Evidence and Request for Pre-Trial Ruling, filed September 3, 2021 (Doc. 3421)("Response"), and the United States' Reply to Defendant's Response to United States' Motion in Limine Regarding Non-Testimonial Evidence and Request for Pre-Trial Ruling, filed September 3, 2021 (Doc. 3424)("Reply").

1.     **Background Facts**.

This case deals with crimes that SNM allegedly committed through its members.   See Indictment at 2.   SNM, through its members, operates in the District of New Mexico, and its

members engage in acts of violence and other criminal activities, "including murder, kidnapping, attempted murder, conspiracy to manufacture/distribute narcotics, and firearms trafficking." Indictment at 2. SNM constitutes an enterprise "as defined in Title 18, United States Code, Section 1959(b)(2), that is, a group of individuals associated in fact that engaged in, and the activities of which affected, interstate and foreign commerce." Indictment at 2-3.

SNM is a prison gang formed in the early 1980s at the Penitentiary of New Mexico ("PNM") after a violent prison riot at PNM during which inmates assaulted and raped twelve correctional officers after taking them hostage. Indictment at 3. During the riot, thirty-three inmates were killed, and over 200 inmates were injured. See Indictment at 3. After the PNM riot, SNM expanded throughout the state's prison system and has had as many as 500 members. See Indictment at 3. SNM now has approximately 250 members, including "a 'panel' or 'mesa' (Spanish for table) of leaders who issue orders to subordinate gang members." Indictment at 3 (no citation for quotation). SNM controls drug distribution and other illegal activities within the New Mexico penal system, but it also conveys orders to members outside the prison system. See Indictment at 3. Members who rejoin their communities after completing their sentences are expected to further the gang's goals: primarily the control and profit of narcotics trafficking. See Indictment at 3-4. Members who fail "to show continued loyalty to the gang [are] disciplined in various ways, . . . includ[ing] murder and assaults." Indictment at 4.

SNM also intimidates and influences smaller New Mexico Hispanic gangs to expand its power. See Indictment at 4. If another gang does not follow SNM's demands, SNM will assault or kill one of the other gang's members to show its power. See Indictment at 4. SNM's rivalry with other gangs also manifests in beatings and stabbings within the prison system. See Indictment at 4. SNM engages in violence "to assert its gang identity, to claim or protect its territory, to

challenge or respond to challenges, to retaliate against a rival gang or member, [and] to gain notoriety and show its superiority over others." Indictment at 4. To show its strength and influence, SNM expects its members to confront and attack any suspected law enforcement informants, cooperating witnesses, homosexuals, or sex offenders. See Indictment at 5. To achieve its purpose of preserving its power, SNM uses intimidation, violence, threats of violence, assaults, and murder. See Indictment at 7. SNM generates income by having its members and associates traffic drugs and extort narcotic traffickers. See Indictment at 8. SNM members' recent conspiracy to murder high-ranking New Mexico Corrections Department ("NM Corrections Department") Officials inspired the Federal Bureau of Investigation's present investigation. See United States v. Garcia, No. CR 15-4275, Memorandum Opinion and Order at 2, 221 F. Supp. 3d 1275, 1277, filed November 16, 2016 (Doc. 133).

   2.   **The Alleged Murder of Frank Castillo and Gallegos' Statement**.

   On or about March 26, 2001, Frank Castillo was allegedly murdered at Southern New Mexico Correctional Facility near Las Cruces, New Mexico. See Indictment at 9. The Indictment alleges that DeLeon, along with Joe Lawrence Gallegos, Edward Troup, a.k.a. "Huero Troup," Leonard Lujan, and Billy Garcia, a.k.a. "Wild Bill," murdered Frank Castillo so that they could "gain[] entrance to and maintain[] and increase[] position" in SNM. Indictment at 9. Several years later, in 2004, J. Gallegos and Benjamin Clark were incarcerated at the same facility. See Motion at 1. While in adjacent cages in the recreation yard of the facility, J. Gallegos and Clark discussed Castillo's death. See Motion at 1. J. Gallegos told Clark that DeLeon held Castillo down "so tight that it was easy for [Gallegos] to kill" Castillo. Transcript of Benjamin Clark's Testimony, filed September 3, 2021 (Doc. 3424-1)("Clark Testimony").

- 4 -

## PROCEDURAL BACKGROUND

This trial is the remaining trial that stems from the Indictment.  See Indictment at 1.  This case is set for trial on September 7, 2021.  See Proposed Amended Scheduling Order, filed July 12, 2021 (Doc. 3304).  This Motion comes before the Court as the parties prepare for trial.  The Motion asks the Court to rule on one of the remaining pre-trial evidentiary issues.  See Motion at 1.

### 1.    The Motion.

The United States asks the Court to determine whether Gallegos' statement to Clark about Gallegos and DeLeon's participation in Castillo's death is admissible at trial.  See Motion at 1. The United States advances two arguments: (i) the Confrontation Clause does not preclude Gallegos' out-of-court statement from being admitted at DeLeon's trial; and (ii) even though it was made out of court and is offered for its truth, Gallegos' statement is admissible as a statement against penal interest, pursuant to rule 804(b)(3) of the Federal Rules of Evidence, because it implicates Gallegos and DeLeon in Castillo's death.  See Motion at 1-5.  Finally, the United States requests that the Court decide whether this statement is admissible before trial.  See Motion at 5.

### 2.    DeLeon's Response.

DeLeon responds and contends that Gallegos' statement is not admissible.  See Response at 2.  DeLeon makes five arguments: (i) because the United States does not provide the statement or background information on the statement in its Motion, there is an insufficient basis to determine whether the statement meets rule 804(b)(3)'s hearsay exception; (ii) the United States does not show that the declarant, J. Gallegos, is unavailable, as rule 804(b) requires, so Gallegos' statement cannot be admitted; (iii) the United States does not provide any corroborating information about the alleged statement, so it does not meet rule 804(b)(3)(B)'s requirement that the statement be "supported by corroborating circumstances that clearly indicate its trustworthiness," Fed. R. Evid.

804(b)(3)(B); (iv) the prejudice to DeLeon of admitting Gallegos' statement would significantly outweigh its probative value, so it is inadmissible under rule 403 of the Federal Rules of Evidence; and (v) Gallegos' statement inculpates both Gallegos and DeLeon, so any portions of the Gallegos' statement that do not implicate Gallegos only are not statements against penal interest, so they cannot be admitted under rule 803(b)(3).  See Response at 1-10.  Deleon therefore asks the Court to deny the Motion.  See Response at 10.

### 3. **The United States' Reply.**

The United States replies and contends that Gallegos' statement is admissible.  See Reply at 1.  The United States does not reply to three of DeLeon's five arguments.  See Reply at 1-2. The United States offers two new pieces of information that, it contends, reply to DeLeon's Response.  See Reply at 1-2.  First, the United States attaches the portion of the transcript that contain Gallegos' response, which, it contends, provides the "statement or necessary information regarding the statement on which it requests the Court's pre-trial ruling."  Reply at 1.  See Clark Testimony at 1-2.  Specifically, in relevant part, the transcript reads:

> A.    And then we started talking about how Pancho [Castillo] got killed.
>
> Q.    And what did Joe Lawrence say?
>
> A.    He said that Angel DeLeon held him down with the monkey grip or gorilla grip, something like that, and that it was easy; that Angel held him so tight that it was easy for him kill to Pancho.

Clark Testimony at 1:18-24.  Second, the United States notes that Gallegos is unavailable, because it contacted Gallegos' attorney to ask whether Gallegos would be available and learned that Gallegos "would . . . invoke his Fifth Amendment" privilege against self-incrimination and would, therefore, not be available to testify.  Reply at 1-2.

## <u>LAW REGARDING THE CONFRONTATION CLAUSE</u>

The Sixth Amendment's Confrontation Clause provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI.  In <u>Crawford v. Washington</u>, the Supreme Court of the United States held that, consistent with the Sixth Amendment, "[t]estimonial [hearsay] statements of witnesses absent from trial [are admissible] only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine."  541 U.S. at 59.  In <u>Davis v. Washington</u>, 547 U.S. 813 (2006), the Supreme Court further elaborated on what a "testimonial" statement is:

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency.  They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

547 U.S. at 822.  The United States Court of Appeals for the Tenth Circuit has restated this rule, defining a testimonial statement as "a 'formal declaration made by the declarant that, when objectively considered, indicates' that the 'primary purpose of the [statement is] to establish or prove past events potentially relevant to later criminal prosecution.'"  <u>United States v. Morgan</u>, 748 F.3d 1024, 1048 (10th Cir. 2014)(alteration in original)(quoting <u>United States v. Smalls</u>, 605 F.3d 765, 777-78 (10th Cir. 2010)).  <u>Accord</u> <u>United States v. Chaco</u>, 801 F. Supp. 2d 1200, 1209-10 (D.N.M. 2011)(Browning, J.)(discussing developments in Tenth Circuit precedent on the test regarding what qualifies as a testimonial statement).

In <u>Melendez-Diaz v. Massachusetts</u>, 557 U.S. 305 (2009), the Supreme Court addressed whether the admission of a sworn affidavit by a forensic chemist, who testified in the affidavit that the substance which police seized from the defendant was cocaine of a certain amount, violated the Confrontation Clause.  <u>See</u> 557 U.S. at 307.  The Supreme Court first found that such affidavits

were testimonial, because they were "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial" and because, under Massachusetts law, the sole purpose of the affidavit was to provide prima facie evidence of the content of the substance seized. 557 U.S. at 310. The Supreme Court then used the affidavit introduced by the prosecution to outline its concerns regarding the lack of cross-examination when such affidavits are introduced as evidence:

> The affidavits submitted by the analysts contained only the bare-bones statement that "[t]he substance was found to contain: Cocaine." At the time of trial, petitioner did not know what tests the analysts performed, whether those tests were routine, and whether interpreting their results required the exercise of judgment or the use of skills that the analysts may not have possessed. While we still do not know the precise tests used by the analysts, we are told that the laboratories use "methodology recommended by the Scientific Working Group for the Analysis of Seized Drugs[.]" At least some of that methodology requires the exercise of judgment and presents a risk of error that might be explored on cross-examination.

557 U.S. at 320 (citation omitted). Because there was no opportunity to cross-examine on these issues, the Supreme Court concluded that introduction of the affidavit violated the defendant's rights under the Confrontation Clause. See 557 U.S. at 329 ("The Sixth Amendment does not permit the prosecution to prove its case via *ex parte* out-of-court affidavits, and the admission of such evidence against Melendez-Diaz was error."). The Supreme Court has since extended this holding to "forensic laboratory report[s] containing a testimonial certification -- made for the purpose of proving a particular fact -- through the in-court testimony of a scientist who did not sign the certification or perform or observe the test reported in the certification." Bullcoming v. New Mexico, 131 S. Ct. 2705, 2710, 2715 (2011)("Accordingly, the analysts who write reports that the prosecution introduces must be made available for confrontation even if they possess 'the scientific acumen of Mme. Curie and the veracity of Mother Teresa.'").

- 8 -

The importance of the Confrontation Clause's application is further delineated by the Supreme Court's consideration of the prosecution's use of live or recorded video testimony without the defendant having the ability to confront the witness face-to-face, which -- except in rare cases -- will violate a defendant's Confrontation Clause rights -- absent a showing of unavailability and prior opportunity to confront the witness.  See United States v. Sandoval, No. 04-2362, 2006 WL 1228953, *7-9 (D.N.M. Mar. 7, 2006)(Browning, J.).  In Maryland v. Craig, 497 U.S. 836 (1990) -- which the Supreme Court decided before Crawford v. Washington -- the Supreme Court rejected a Confrontation Clause challenge to a Maryland statute that allowed a child witness in a child molestation case, under certain circumstances, to testify via a one-way closed circuit television, which did not allow the witness to view the defendant.  See 497 U.S. at 860.  While upholding the constitutionality of a child's testimony outside the defendant's presence, the Supreme Court in Maryland v. Craig recognized that the "central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact."  497 U.S. at 845.[1]

The Supreme Court in Maryland v. Craig recognized that the context of an adversary proceeding before the trier of fact involves "[t]he combined effect of these elements of confrontation -- physical presence, oath, cross-examination, and observation of demeanor by the trier of fact" that "is the norm of Anglo-American criminal proceedings."  497 U.S. at 846.  The Supreme Court in Maryland v. Craig also acknowledged the peculiar power of face-to-face confrontation in that "face-to-face confrontation enhances the accuracy of fact finding by reducing

---

[1]The Supreme Court has since distanced itself from this holding that the purpose of the Confrontation Clause is to ensure the reliability of evidence.  See Crawford v. Washington, 541 U.S. at 61.

the risk that a witness will wrongfully implicate an innocent person," 497 U.S. at 846 (citing <u>Coy v. Iowa</u>, 487 U.S. 1012, 1019-20 (1988)), and that "face-to-face confrontation forms 'the core of the values furthered by the Confrontation Clause,'" <u>Maryland v. Craig</u>, 497 U.S. at 847 (quoting <u>California v. Green</u>, 399 U.S. 149, 157 (1970)).

The Supreme Court explained in <u>Maryland v. Craig</u> that the Confrontation Clause "reflects a preference for face-to-face confrontation at trial," but that the preference "must occasionally give way to considerations of public policy and the necessities of the case." 497 U.S. at 849 (internal quotation marks omitted). The Supreme Court emphasized that the preference for face-to-face confrontation is strong, and that a defendant's Sixth Amendment confrontation right "may be satisfied absent a physical, face-to-face confrontation at trial only where denial of such confrontation is necessary to further an important public policy and only where the reliability of the testimony is otherwise assured." 497 U.S. at 850.

While the issue is decidedly less clear, it is unlikely that a violation of a defendant's Confrontation Clause rights occur when he calls one of his own witnesses who is aligned with him by videoconference or telephonically. <u>See</u> U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to . . . be confronted <u>with the witnesses against him</u> . . . ." (emphasis added)). <u>Cf.</u> <u>United States v. Olguin</u>, 643 F.3d 384, 392 (5th Cir. 2011)("The Sixth Amendment guarantees the right to confrontation against a party testifying against him, not against others."). The need for "adversariness" is not present when the witness is aligned with the defendant. <u>Maryland v. Craig</u>, 497 U.S. at 845. The Supreme Court spoke in <u>Crawford v. Washington</u> about the need for the defendant to have "an adequate opportunity to cross-examine" a witness to satisfy the Confrontation Clause, a need which is not present when the witness is aligned with the defendant. 541 U.S. at 58. The Federal Rules of Evidence, for example, generally

do not permit a party to ask leading questions -- a key tool of cross examination -- of a witness aligned with the party calling the witness.  See Fed. R. Evid. 611(c).[2]  A defendant might also waive a Confrontation Clause challenge by calling his own witness by videoconference or telephonically.  See United States v. Lopez-Medina, 596 F.3d 716, 730-734 (10th Cir. 2010)("Prior to Crawford, we held there was 'no doubt' a defendant could waive his rights under the Confrontation Clause.  The parties do not argue Crawford changed this rule.").

Like many constitutional rights, a defendant may choose to waive his Confrontation Clause rights.  In 1969, the Supreme Court recognized that a defendant may waive his Confrontation Clause rights and that defendants commonly do so when pleading guilty.  See Boykin v. Alabama, 395 U.S. 238, 270 (1969)("Several federal constitutional rights are involved in a waiver that takes place when a plea of guilty is entered in a state criminal trial. . . .  Third, is the right to confront one's accusers.").  The Tenth Circuit has recognized that, both before and after the Supreme Court's decision in Crawford v. Washington, a defendant may knowingly waive his Confrontation Clause rights at trial.  See United States v. Lopez-Medina, 596 F.3d at 730-734 (recognizing that Confrontation Clause rights may be waived at trial "at least where there is an explicit waiver").  Specifically, the Tenth Circuit stated: "Prior to Crawford, we held there was 'no doubt' a defendant could waive his rights under the Confrontation Clause.  The parties do not argue Crawford changed this rule."  United States v. Lopez-Medina, 596 F.3d at 731 (citations omitted).  The Tenth Circuit has held that a defendant's counsel can stipulate to the admissibility of evidence that would otherwise violate the Confrontation Clause if doing so "was a matter of prudent trial strategy."

_____

[2]Rule 611(c) of the Federal Rules of Evidence provides: "(c) **Leading Questions.**  Leading questions should not be used on direct examination except as necessary to develop the witness's testimony.  Ordinarily, the court should allow leading questions: (1) on cross-examination; and (2) when a party calls a hostile witness, an adverse party, or a witness identified with an adverse party."  Fed. R. Evid. 611(c) (bold in original).

Hawkins v. Hannigan, 185 F.3d 1146, 1155 (10th Cir. 1999).  The United States Court of Appeals

for the Sixth Circuit has recognized that such a waiver can be permissible in the context of the

prosecution admitting one of its witnesses' videotaped deposition.  See Earhart v. Konteh, 589

F.3d 337, 344 (6th Cir. 2009).  The Sixth Circuit in that case relied on one of its prior decisions

where it had permitted such a waiver:

> The State relies upon our holding in Bailey v. Mitchell, 271 F.3d 652 (6th Cir.
> 2001), to argue that Earhart waived his right to contest the admission of the
> videotape deposition.  In Bailey, we held that a criminal defendant waived his right
> to confrontation by entering into a quid pro quo agreement with a state prosecutor.
> Id. at 657.  The petitioner in Bailey had agreed to allow the State to admit the
> videotape deposition if the prosecutor would consent to the defendant's motion for
> a continuance.  Id.  Importantly, the Ohio state courts found as a factual matter that
> Bailey had made an explicit deal with the prosecutor for the admission of the
> videotape.  Id.

Earhart v. Konteh, 589 F.3d at 344.  Notably, the Tenth Circuit's case in United States v.

Lopez-Medina involved an oral waiver on the record in open court.  See 596 F.3d at 731 ("It is

clear from this statement [to the judge] that defense counsel intentionally relinquished his (or

rather, his client's) confrontation right through his questioning of Johnson.").

### LAW REGARDING CO-DEFENDANTS' STATEMENTS AND THE CONFRONTATION CLAUSE AFTER CRAWFORD V. WASHINGTON: BRUTON V. UNITED STATES AND NONTESTIMONIAL HEARSAY

Bruton v. United States, 391 U.S. 123 (1968), held that, in a joint trial, a defendant's Sixth

Amendment right of confrontation is violated, regardless of any limiting instruction that might be

given to the jury, by admitting the confession of a non-testifying codefendant which implicates the

defendant.  In Bruton v. United States, George Bruton and William Evans were jointly tried for

robbery, and, upon his arrest, Evans gave a confession to a postal inspector in which he admitted

that he and Bruton had committed the robbery.  See 391 U.S. at 124.  At trial, the prosecution was

allowed to introduce Evans' confession, and the trial court -- perhaps recognizing that evidence

might pose a problem -- gave a limiting instruction charging the jury that it was not to consider Evans' confession "in any respect to the defendant Bruton." 391 U.S. at 125. Both Bruton and Evans were convicted, but, as mentioned, the Supreme Court held that it was constitutional error to admit into evidence the incriminating statement which co-defendant Evans made and which implicated defendant Bruton, and that this error was not otherwise cured by a limiting instruction. See 391 U.S. at 128. The Supreme Court noted that a co-defendant's confession is admissible under hearsay rules only against the confessing co-defendant, which is why the Supreme Court contemplated whether a limiting instruction could satisfactorily cure the problem by instructing jurors to ignore the confession in determining a non-confessing co-defendant's guilt or innocence. See 391 U.S. at 128 n.3 ("We emphasize that the hearsay statement inculpating petitioner was clearly inadmissible against him under traditional rules of evidence, . . . the problem arising only because the statement was . . . admissible against the declarant."). The Supreme Court said that

> there are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored. Such a context is presented here, where the powerfully incriminating extrajudicial statements of a codefendant, who stands accused side-by-side with the defendant, are deliberately spread before the jury in a joint trial. Not only are the incriminations devastating to the defendant but their credibility is inevitably suspect . . . . The unreliability of such evidence is intolerably compounded when the alleged accomplice, as here, does not testify and cannot be tested by cross-examination.

391 U.S. at 135-36. The Supreme Court also stated:

> If it is a denial of due process to rely on a jury's presumed ability to disregard an involuntary confession, it may also be a denial of due process to rely on a jury's presumed ability to disregard a codefendant's confession implicating another defendant when it is determining that defendant's guilt or innocence.

391 U.S. at 130-31. Ultimately, under Bruton v. United States, the Supreme Court held that there is a substantial threat that the jury would ignore a limiting instruction and use the co-defendant's

confession as evidence of the other non-confessing defendant's guilt, and thus such confessions are inadmissible unless the codefendant testifies.  See 391 U.S. at 137.

The Supreme Court subsequently explored its Bruton v. United States doctrine in Richardson v. Marsh, 481 U.S. at 200, and Gray v. Maryland, 523 U.S. at 195.  In Richardson v. Marsh, Clarissa Marsh, Benjamin Williams and Kareem Martin faced murder charges.  See 481 U.S. at 202.  Both Marsh and Williams were tried jointly, but Williams did not testify at the joint trial.  See 481 U.S. at 202, 204.  At trial, the prosecution introduced evidence of Williams' confession by which he implicated co-Defendants Marsh and Martin, as well as himself.  See 481 U.S. at 203-04.  The trial court redacted the confession to remove references to Marsh, and "omitted all indication that anyone other than Martin and Williams participated in the crime."  481 U.S. at 203.  The trial court also instructed the jury to "not use it (Williams' confession) in any way against (Marsh)."  481 U.S. at 204.  The Supreme Court ultimately concluded that the trial court did not err by admitting Williams' confession as it had been redacted, because "the confession was not incriminating on its face."  481 U.S. at 208.  Accordingly, the Supreme Court affirmed that its Bruton v. United States holding could be satisfied in practice by redaction.  See Richardson v. Marsh, 481 U.S. at 209 (referring to Bruton v. United States, 391 U.S. at 134 n.10).

In Gray v. Maryland, Anthony Bell and Kevin Gray were tried jointly for murder.  See Gray v. Maryland, 523 U.S. at 188.  After Bell was arrested, he told the police that he, Gray, and a third person were responsible for the victim's death.  See Gray v. Maryland, 523 U.S. at 188.  At Bell and Gray's joint trial, the trial court permitted introduction into evidence a redacted version of Bell's confession.  See 523 U.S. at 188.  The detective who testified about Bell's confession said "deleted" or "deletion" whenever the name of Gray or the third participant appeared.  523 U.S. at 188.  Immediately thereafter, however, the detective testified that the police arrested Gray

only upon Bell's confession.  <u>See</u> 523 U.S. at 189.  A written copy of Bell's confession was introduced with the names of Gray and the third person having been replaced with blank spaces that were separated by commas.  <u>See</u> 523 U.S. at 189.  The jury was also instructed that Bell's confession could not be used as evidence against Gray.  <u>See</u> 523 U.S. at 189.

The Supreme Court acknowledged that, in <u>Richardson v. Marsh</u>, it had, indeed, held that the admission of co-defendant confessions that are redacted to remove any reference to the existence of the other defendants will not violate <u>Bruton v. United States</u>.  <u>See</u> <u>Gray v. Maryland</u>, 523 U.S. at 190-91.  The Supreme Court noted, however, that, unlike the redacted confession in <u>Richardson v. Marsh</u>, the confession in <u>Gray v. Maryland</u> referenced the existence of the non-confessing defendant, because the government merely replaced Gray's name with the word "deleted" or a blank space.  <u>Gray v. Maryland</u>, 523 U.S. at 192.  The Supreme Court concluded that a redaction that replaced a defendant's name with an obvious indication of deletion falls within <u>Bruton v. United States</u>' purview, because "[r]edactions that simply replace a name with an obvious blank space or a word such as 'deleted' or a symbol or other similarly obvious indications of alteration . . . so closely resemble *Bruton [v. United States*'] unredacted statements that, in our view, the law must require the same result."  <u>Gray v. Maryland</u>, 523 U.S. at 189.

Then came <u>Crawford v. Washington</u>.  <u>See</u> <u>Crawford v. Washington</u>, 541 U.S. at 36.  In <u>Crawford v. Washington</u>, the Supreme Court essentially held that that the Confrontation Clause is violated when hearsay is "testimonial," admitted against a criminal defendant, and the hearsay declarant does not testify at the defendant's trial, unless (i) the declarant was unavailable for trial, and (ii) the defendant was previously able to cross-examine the declarant.  <u>See</u> <u>Crawford v. Washington</u>, 541 U.S. at 59-61.  <u>Crawford v. Washington</u> held that the Confrontation Clause is violated only when testimonial hearsay is admitted against a defendant and the defendant is not

- 15 -

given the opportunity to cross-examine the declarant.  See U.S. at 59-61.  This holding necessarily implicates the logic underlying Bruton v. United States, because, to the extent that Bruton v. United States protects the rights afforded to criminal defendants under the Confrontation Clause, Crawford v. Washington makes clear that the Confrontation Clause protects only against testimonial hearsay that is admitted against a defendant absent the opportunity to cross-examine the declarant.  See 541 U.S. at 59-61.  With respect to what such a "testimonial" statement might be, however, the Supreme Court in Crawford v. Washington did not provide a definition to differentiate "testimonial" from "non-testimonial" hearsay, and instead noted only that "various formulations" or "articulations" or "definitions" of "testimonial" could be posited; and, apart from citing examples of statements that would qualify as testimonial under any definition, the Supreme Court specifically declined to undertake crafting a controlling definition of "testimonial."  541 U.S. at 51-53.  The Court indeed reiterated that it was not providing a definition for "testimonial": "[W]e leave for another day any effort to spell out a comprehensive definition of 'testimonial.'" Crawford v. Washington, 541 U.S. at 68.  The Supreme Court has provided, however, that statements made by defendants to fellow prisoners are not testimonial, meaning they would not fall under the purview of the Confrontation Clause after Crawford v. Washington.  See Davis v. Washington, 547 U.S. at 825 (providing that statements from one prisoner to another are "clearly" not testimonial).

Since Crawford v. Washington, many Courts of Appeal have, accordingly, superseded Bruton v. United States' analysis with Crawford v. Washington's.  That is, the Courts of Appeal have held that Crawford v. Washington limited Bruton v. United States to protect co-defendants only from testimonial statements.  See United States v. Dale, 2010 WL 2977410, at *9 (8th Cir. 2010)(holding that defendant's statements to prisoner were not testimonial and therefore did not

violate co-defendant's Confrontation Clause rights); United States v. Castro-Davis, 612 F.3d 53, 65 (1st Cir. 2010)(holding that defendant's recorded telephone statements to his mother were non-testimonial); United States v. Smalls, 605 F.3d at 768 n.2 ("[T]he *Bruton* rule, like the Confrontation Clause on which it is premised, does not apply to nontestimonial hearsay statements."); United States v. Johnson, 581 F.3d 320, 326 (6th Cir. 2009)(holding that, because Bruton v. United States is based on the Confrontation Clause, then it also only applies to testimonial statements, and any non-testimonial statement is not subject to it); United States v. Pike, 292 F. App'x 108, 112 (2d Cir. 2008)("[B]ecause the statement was not testimonial, its admission does not violate either *Crawford* or *Bruton*.").  Some federal courts have concluded otherwise, however, and continue to apply Bruton v. United States to nontestimonial statements despite Crawford v. Washington.  See United States v. Ramos-Cardenas, 524 F.3d 600, 609-10 (5th Cir. 2008)(holding that, although the co-defendant's statements were nontestimonial, because they were entered against the declarant, Bruton v. United States governs the analysis and not Crawford v. Washington); United States v. Williams, 2010 WL 3909480 (E.D. Va. 2010)(Cacheris, J.).

Although the weight of precedent counsels otherwise, the Court pauses to discuss the conclusion in United States v. Williams, a non-binding, out-of-circuit opinion.  United States v. Williams, involved co-defendants Marvin Wayne Williams, Jr., Freddie Wigenton, and Deshawn Anderson, who were charged with conspiracy to distribute crack cocaine, intentional killing while engaged in drug trafficking, and use of a firearm during a drug offense relating in death.  See 2010 WL 3909480, at *1.  These defendants allegedly made statements to several witnesses incriminating both themselves and their co-defendants, and the United States intended to introduce those statements at their joint trial.  See United States v. Williams, 2010 WL 3909480, at *1.  The

United States District Court for the Eastern District of Virginia concluded that, while the Supreme

Court in Crawford v. Washington had held that the Confrontation Clause covers testimonial

hearsay, it did not hold that the Clause exclusively covers only testimonial hearsay.  See United

States v. Williams, 2010 WL 3909480, at *2-3 (citing Crawford v. Washington, 541 U.S. at 60-61

("Members of this Court and academics have suggested . . . two proposals: First, that we apply the

Confrontation Clause only to testimonial statements. . . .  Second, that we impose an absolute bar

to statements that are testimonial. . . .  In [White v. Illinois, 502 U.S. 346, 352-53 (1992)], we

considered the first proposal and rejected it.  Although our analysis in this case casts doubt on that

holding, we need not definitively resolve whether it survives our decision today. . . .")).  The

Eastern District of Virginia court reasoned that it is "highly unlikely that Crawford (a case that

expanded the Confrontation Clause's application) would have eviscerated Bruton (a Confrontation

Clause case that Crawford cited) so casually."  United States v. Williams, 2010 WL 3909480, at

*4.  Thus, the Eastern District of Virginia court held that Bruton v. United States can still apply to

the co-defendants' statements at issue in that case and bar their introduction regardless whether

they were non-testimonial.  See United States v. Williams, 2010 WL 3909480, at *4.[3]

---

[3]Some academics agree.  See Colin Miller, Avoiding A Confrontation? How Courts Have Erred in Finding That Nontestimonial Hearsay Is Beyond the Scope of the Bruton Doctrine, 77 Brook. L. Rev. 625, 661 (2012)(arguing that: "[T]here are two possible interpretations of the scope of the Bruton doctrine in the wake of Crawford and its progeny -- and that each should preclude the admission of nontestimonial codefendant confessions.  The first is that Crawford, like its predecessor, had nothing to say about the inadmissibility of codefendant confessions under the Bruton doctrine, meaning that courts should find that even nontestimonial codefendant statements can violate the doctrine.  The second is that Crawford deconstitutionalized the Bruton doctrine, meaning that nontestimonial codefendant statements do not violate the Confrontation Clause.  In this case, however, courts should readily find that such nontestimonial codefendant statements violate Federal Rule of Evidence 403 and are therefore inadmissible anyway.").  The Court reiterates, however, that the Tenth Circuit has reached a different conclusion.  See United States v. Smalls, 605 F.3d at 768 n.2.

The Tenth Circuit has foreclosed the analysis underlying United States v. Williams and instead dictates the Court's inevitable conclusion that Crawford v. Washington limited Bruton v. United States's scope to testimonial statements by co-Defendants.  See United States v. Smalls, 605 F.3d at 768 n.2.  In United States v. Smalls, the Tenth Circuit considered a case where Glenn Dell Cook, Walter Melgar-Diaz, and Paul Othello Smalls had been accused of killing Phillip Gantz, who was a jailhouse informant.  See 605 F.3d at 767-68.  Gantz had been helping federal drug enforcement officials with their investigations, and was housed in the same unit as the three defendants Cook, Melgar-Diaz, and Smalls.  See 605 F.3d at 767-68.  Prison guards made a recording of one of the defendants, Cook, implicating his co-defendant Smalls in a confession regarding the murder to a fellow inmate and confidential informant.  See 605 F.3d at 767-68.  Relying on Bruton v. United States, the district court severed the two defendants' trials, because it concluded that Cook's statement could not be introduced against Smalls.  605 F.3d at 768 n.2.  The United States nonetheless moved to admit this statement against Smalls in his separate trial, arguing that the statement was made against his codefendant Cook's penal interests.  See 605 F.3d at 772-73.  The district court concluded that Cook's statement was non-testimonial and then "analyzed the admissibility of Cook's statement under the framework of the Supreme Court's Confrontation Clause jurisprudence as set forth in Ohio v. Roberts," thereafter concluding that the statement lacked a "particularized guarantee of trustworthiness," and that the court should exclude the statement.  United States v. Smalls, 605 F.3d at 772-73.

The United States then appealed that decision, and the Tenth Circuit reversed it.  See 605 F.3d at 773-74.  The Tenth Circuit concluded that, if Cook's statement had been testimonial, its exclusion would have been proper, but, because the statement was non-testimonial, the Confrontation Clause's protections did not apply.  See 605 F.3d at 787.  The Tenth Circuit reasoned

that if the statement met the definition for "statements against interest" under the Federal Rules of Evidence, it was admissible against Smalls. 605 F.3d at 780. The Tenth Circuit, accordingly, held that the district court erred in excluding the entire statement, and it remanded the case to determine exactly which parts of the statement were self-inculpatory and therefore admissible. See 605 F.3d at 786-87. Notably, in reaching this conclusion, the Tenth Circuit also provided:

> Although the district court's severance order is not part of the record on appeal, we take judicial notice of it under Fed. R. Evid. 201 as it appears of record in *United States v. Smalls*, No. 06–CR–2403-RB-1, Memorandum Opinion and Order (D.N.M. May 7, 2008)(Doc. # 280). Relying on *Bruton v. United States*, 391 U.S. 123 [] and its progeny, the district court reasoned the admission into evidence of a recorded statement in which Cook incriminated both himself and his alleged cohorts before a CI would violate Defendant Smalls' right to confrontation. In *Bruton*, the Court held that defendant was deprived of his Sixth Amendment right to confrontation where his accomplice's confession, made to a postal inspector during an interrogation, was introduced at their joint trial. The Court explained that a limiting jury instruction was insufficient under the facts of the case to cure any prejudice to that defendant. As will become apparent from our opinion, *Bruton* is consistent with the present state of Sixth Amendment law because the accomplice's confession, unlike Cook's statement, was testimonial, rendering it inadmissible against the defendant absent an opportunity for cross-examination. Notably, however, the *Bruton* rule, like the Confrontation Clause upon which it is premised, does not apply to nontestimonial hearsay statements.

United States v. Smalls, 605 F.3d at 768 n.2. In the Tenth Circuit, after United States v. Smalls, it is clear that Crawford v. Washington limits Bruton v. United States and now protects against the admission only of co-defendants' testimonial statements. See United States v. Smalls, 605 F.3d at 768 n.2.

### LAW REGARDING HEARSAY

"Hearsay testimony is generally inadmissible." United States v. Christy, 2011 WL 5223024, at *5 (D.N.M. 2011)(Browning, J.)(citing Fed. R. Evid. 802). Under rule 801(c) of the Federal Rules of Evidence, "hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed.

R. Evid. 801(c).  Hearsay bars a party from presenting its own statements, such as "a defendant . . . attempt[ing] to introduce an exculpatory statement made at the time of his arrest without subjecting himself to cross-examination."  United States v. Cunningham, 194 F.3d 1186, 1199 (11th Cir. 1999)(Carnes, J.).  A statement that is otherwise hearsay, however, may be offered for a permissible purpose other than to prove the truth of the matter asserted, including impeaching a witness.  See United States v. Caraway, 534 F.3d 1290, 1299 (10th Cir. 2008)(Hartz, J.)("We have already explained why the content of the statement, if used substantively, would be inadmissible hearsay.  If admitted for impeachment purposes, however, it is not hearsay.").  Rule 805 of the Federal Rules of Evidence recognizes that "[h]earsay within hearsay" -- commonly referred to as double hearsay -- may be admissible "if each part of the combined statements conforms with an exception to the rule." Fed. R. Evid. 805.  A party opponent's statement is excluded from the definition of hearsay where:

> The statement is offered against an opposing party and:
>
> **(A)** was made by the party in an individual or representative capacity;
>
> **(B)** is one the party manifested that it adopted or believed to be true;
>
> **(C)** was made by a person whom the party authorized to make a statement on the subject;
>
> **(D)** was made by the party's agent or employee on a matter within the scope of that relationship and while it existed; or
>
> **(E)** was made by the party's coconspirator during and in furtherance of the conspiracy.

Fed. R. Evid. 801(d)(2).  The United States Court of Appeals for the Tenth Circuit has stated:

> Admissions by a party-opponent are excluded from the category of hearsay on the theory that their admissibility in evidence is the result of the adversary system rather than satisfaction of the conditions of the hearsay rule.  No guarantee of trustworthiness is required in the case of an admission.  The freedom which admissions have enjoyed from technical demands of searching for an assurance of

trustworthiness in some against-interest circumstance, and from restrictive influences of the opinion rule and the rule requiring first-hand knowledge, when taken with the apparently prevalent satisfaction with the results, calls for a generous treatment of this avenue of admissibility.

Grace United Methodist Church v. City of Cheyenne, 451 F.3d 643, 667 (10th Cir. 2006)(Seymour, J.)(internal quotation marks and alterations omitted).[4]

Hearsay evidence is generally inadmissible "because it is considered unreliable." United States v. Lozado, 776 F.3d 1119, 1121 (10th Cir. 2015)(citing Williamson v. United States, 512 U.S. 594, 598 (1994)). See Fed. R. Evid. 801(c) (defining hearsay as an out-of-court statement offered "to prove the truth of the matter asserted in the statement"). In addition to nonhearsay-styled statements under rule 801, the hearsay rule is also subject to several exceptions. Under rule 804(b)(3), an out-of-court statement is admissible if the declarant is unavailable to testify, and the statement is "against the declarant's proprietary, pecuniary, or penal interest." United States v. Lozado, 776 F.3d at 1125 (citing Williamson v. United States, 512 U.S. at 599-600). A statement against interest is one that "a reasonable person in the declarant's position would have made only if the person believed it to be true." Fed. R. Evid. 804(b)(3)(A). Moreover, the statement must be

---

[4]The 2011 restyling of the Federal Rules removed "admissions" from the language of rule 801(d) of the Federal Rules of Evidence, and uses instead the term "statements." Fed. R. Evid. 801(d). This replacement was purposeful: "The term 'admissions' is confusing because not all statements covered by the exclusion are admissions in the colloquial sense -- a statement can be within the exclusion even if it 'admitted' nothing and was not against the party's interest when made." Fed. R. Evid. 801, advisory committee's note on 2011 Amendments.

Although the advisory committee made the commentary quoted in the text regarding the trustworthiness of "admissions by a party-opponent" before the 2011 amendments to the Federal Rules of Evidence, the analysis should not be different under the new 2011 restyling of the rules. Because the advisory committee's purpose for the 2011 restyling was to make the rules "more easily understood and to make style and terminology consistent through the rules," and there was no "intent to change any result in any ruling on evidence admissibility," the analysis applied before 2011 should still be useful for cases after the restyling. Fed. R. Evid. 801.

"supported by corroborating circumstances that clearly indicate its trustworthiness." Fed. R. Evid. 804(b)(3)(B).

## LAW REGARDING STATEMENTS AGAINST INTEREST UNDER RULE 804(B)(3)

Under rule 804(b)(3) of the Federal Rules of Evidence, an out-of-court statement is admissible if the declarant is unavailable to testify, and the statement is "against the declarant's proprietary, pecuniary, or penal interest." United States v. Lozado, 776 F.3d 1119, 1125 (10th Cir. 2015)(citing Fed. R. Evid. 804(b)(3)(A). A statement against interest is one that "a reasonable person in the declarant's position would have made only if the person believed it to be true." Fed. R. Evid. 804(b)(3)(A). Moreover, the statement must be "supported by corroborating circumstances that clearly indicate its trustworthiness." Fed. R. Evid. 804(b)(3)(B).

Rule 804(b)(3) embodies "the commonsense notion that reasonable people, even reasonable people who are not especially honest, tend not to make self-inculpatory statements unless they believe them to be true." United States v. Smalls, 605 F.3d 765, 780-81 (10th Cir. 2010)(internal quotation marks omitted)(quoting Williamson v. United States, 512 U.S. 594, 599 (1994)). The Tenth Circuit has said: "We may safely surmise that from time immemorial, only on the rarest occasion, if ever, has one of sound mind -- even one of sound mind who is not particularly honest -- falsely confessed a murder to an apparent acquaintance or friend." United States v. Smalls, 605 F.3d at 783. That sort of statement is admissible, however, only to the extent that it inculpates the declarant, because "[t]he fact that a statement is self-inculpatory does make it more reliable; but the fact that a statement is collateral to a self-inculpatory statement says nothing at all about the collateral statement's reliability." Williamson v. United States, 512 U.S. at 600. See United States v. Baca, 447 F. Supp. 3d 1149, 1206-07 (D.N.M. 2020)(Browning, J.); United States v. DeLeon, 287 F. Supp. 3d 1187, 1240 (D.N.M. 2018)(Browning, J.).

## LAW REGARDING RULE 403

Rule 403 provides: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.  Under rule 403, the trial court must weigh the proffered evidence's probative value against its potential for unfair prejudice.  See United States v. Record, 873 F.2d 1363, 1375 (10th Cir. 1989).  "[I]t is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter [under rule 403]."  United States v. Pettigrew, 468 F.3d 626, 638 (10th Cir. 2006)(quoting United States v. Sides, 944 F.2d 1554, 1563 (10th Cir. 1991)).  The United States Court of Appeals for the Tenth Circuit has reminded district courts that they should be "mindful" that "exclusion of evidence under Rule 403 that is otherwise admissible under the other rules is an extraordinary remedy and should be used sparingly."  United States v. Smalls, 605 F.3d at 787.

The decision to admit or exclude evidence pursuant to rule 403 is within the trial court's discretion, see United States v. Lugo, 170 F.3d 996, 1005 (10th Cir. 1999), and the trial court's discretion to balance possible unfair prejudice against probative value is broad, see United States v. Bice-Bey, 701 F.2d 1086, 1089 (4th Cir. 1983); United States v. Masters, 622 F.2d 83, 87-88 (4th Cir. 1980).  The Supreme Court has noted:

> In deference to a district court's familiarity with the details of the case and its greater experience in evidentiary matters, courts of appeals afford broad discretion to a district court's evidentiary rulings . . . . This is particularly true with respect to Rule 403 since it requires an "on-the-spot balancing of probative value and prejudice, potentially to exclude as unduly prejudicial some evidence that already has been found to be factually relevant."

Sprint/United Mgmt. Co. v. Mendelsohn, 552 U.S. 379, 384 (2008)(quoting 1 Steven Alan Childress & Martha S. Davis, Fed. Standards of Review § 4.02, at 4-16 (3d ed. 1999)).  See United

States v. Abel, 469 U.S. 45, 54 (1984)("Assessing the probative value of [proffered evidence], and weighing any factors counseling against admissibility is a matter first for the district court's sound judgment under Rules 401 and 403 . . . .").

Evidence may be unfairly prejudicial if it would likely provoke an emotional response from the jury or would otherwise tend to adversely affect the jury's attitude toward a particular matter. See United States v. Rodriguez, 192 F.3d 946, 951 (10th Cir. 1999). Evidence is not unfairly prejudicial merely because it damages a party's case. See United States v. Caraway, 534 F.3d 1290, 1301 (10th Cir. 2008); United States v. Curtis, 344 F.3d 1057, 1067 (10th Cir. 2003); United States v. Martinez, 938 F.2d 1078, 1082 (10th Cir. 1991). Rather, "[t]o be unfairly prejudicial, the evidence must have 'an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'" United States v. Caraway, 534 F.3d at 1301 (quoting Fed. R. Evid. 403 advisory committee note).

## ANALYSIS

The United States asserts that Gallegos' statement is admissible, because (i) the Confrontation Clause in the Sixth Amendment to the United States Constitution does not preclude Gallegos' out-of-court statement from being admitted at DeLeon's trial; and (ii) even though it was made out of court and is offered for its truth, Gallegos' statement is admissible as a statement against penal interest, pursuant to rule 804(b)(3) of the Federal Rules of Evidence, because it implicates Gallegos and DeLeon in Castillo's death. See Motion at 1-5. The Court concludes that Gallegos' statement is admissible only in part, because, although Gallegos' statement is not testimonial and, therefore, the Confrontation Clause does not bar the statement, see United States v. Lozado, 776 F.3d 1119, 1125 (10th Cir. 2015), Gallegos' statement is admissible under rule 804(b)(3) only in part, because its reference to DeLeon is non-self-inculpatory, see United States v. Williamson, 512 U.S. at 599; United States v. Smalls, 605 F.3d at 781.

I.    **GALLEGOS' STATEMENT IS NOT TESTIMONIAL.**

The Confrontation Clause in the Sixth Amendment to the United States Constitution bars the introduction at trial of out-of-court "testimonial" statements, unless the declarant is unavailable and the defendant had a prior opportunity to cross-examine the witness. Crawford v. Washington, 541 U.S. at 53. In other words, only testimonial statements "cause the declarant to be a 'witness' within the meaning of the Confrontation Clause." United States v. Smalls, 605 F.3d at 780 (quoting Davis v. Washington, 547 U.S. 813, 821 (2006). A statement is "testimonial" if "a reasonable person in the position of the declarant would objectively foresee that the primary purpose of the statement was for use in the investigation or prosecution of a crime," United States v. Smalls, 605 F.3d at 778, or if a "reasonable person in the position of the declarant would objectively foresee that his statement might be used in the investigation or prosecution of a crime," United States v. Townley, 472 F.3d 1267, 1272 (10th Cir. 2007). The "proper inquiry" is "'whether the declarant intends to bear testimony against the accused.'" United States v. Smalls, 605 F.3d at 778 (quoting United States v. Summers, 414 F.3d 1287, 1302 (2005)). The intent standard is objective. See United States v. Smalls, 605 F.3d at 778.

Here, Gallegos' statement to Clark in the prison recreation yard is not testimonial. Although the evidence relating to the statement's context and Gallegos' intent is sparse, it counsels against concluding that Gallegos' statement is testimonial. See Motion at 1-6; Response at 1-10; Reply at 1-2; Clark Testimony at 1-2. The conversation between Clark and Gallegos happened while the two were "in adjacent cages in the [prison] recreation yard." Motion at 1. Whether a statement is testimonial depends on "whether [the] statement was given with the 'primary purpose of creating an out-of-court substitute for trial testimony.'" Ohio v. Clark, 576 U.S. 237, 238 (2015)(quoting Michigan v. Bryant, 562 U.S. 334, 358 (2011)). Although there was no ongoing

emergency, the statement was not given to law enforcement, and there is no indication Gallegos was intending to create a record for trial or other proceeding. See Motion at 1-6; Reply at 1-2; Clark Testimony at 1-2. Gallegos was speaking to another prisoner in the recreation yard. See Clark Testimony at 2. Therefore, because "statements from one prisoner to another are nontestimonial," Gallegos' statement to Clark about Gallegos' and DeLeon's participation in Castillo's death is not testimonial. United States v. DeLeon, 287 F. Supp. 3d 1187, 1251 (D.N.M. 2018)(Browning, J.). See Dutton v. Evans, 400 U.S. 74, 87-89 (1970)(plurality opinion)(concluding that statements from one prisoner to another are not testimonial). As a result, because the statement's primary purpose was not to be testimonial, the Confrontation Clause does not bar the admissibility of Gallegos' statement. See Michigan v. Bryant, 562 U.S. at 359 ("Where no such primary purpose exists, the admissibility of a statement is the concern of state and federal rules of evidence, not the Confrontation Clause.").

## II. GALLEGOS' STATEMENT IS ADMISSIBLE AS A STATEMENT AGAINST PENAL INTEREST ONLY IN PART, BECAUSE PORTIONS ARE NON-SELF-INCULPATORY.

Because the Confrontation Clause does not bar the admissibility of Gallegos' statement, its admissibility turns on the Federal Rules of Evidence. See Michigan v. Bryant, 562 U.S. at 359. Under rule 804(b)(3), a statement is admissible if:

> (1) the declarant is unavailable; (2) a reasonable person in the declarant's position would not have made the statement unless she believed it to be true because, when made, it exposed the declarant to criminal liability; and (3) the statement is supported by "corroborating circumstances that clearly indicate its trustworthiness."

United States v. Hammers, 942 F.3d 1001, 1010 (10th Cir. 2019), cert. denied, 140 S. Ct. 2768 (2020)(quoting Fed. R. Evid. 804(b)(3)). Rule 804(b)(3) covers only statements that are "'individually self-inculpatory.'" United States v. Smalls, 605 F.3d at 781 (quoting Williamson

v. United States, 512 U.S. at 599). Even if the broader narrative is self-inculpatory, a court may

not "just assume" that an individual statement is self-inculpatory "because it is part of a fuller

confession, and this is especially true when the statement implicates someone else." Williamson

v. United States, 512 U.S. at 601. As the Tenth Circuit states,

> Under Rule 804(b)(3), a statement against the declarant's interest is not excluded as hearsay if it is sufficiently reliable. Rule 804(b)(3) covers only those statements that are "individually self-inculpatory." United States v. Smalls, 605 F.3d 765, 781 (10th Cir. 2010)(citing Williamson v. United States, 512 U.S. 594, 599 (1994)). We have rejected the notion "that an entire narrative, including non-self-inculpatory parts (but excluding the clearly self-serving parts . . . ) may be admissible if it is in the aggregate self-inculpatory." United States v. Smalls, 605 F.3d at 781 (citing United States v. Williamson, 512 U.S. at 601).

United States v. Hammers, 942 F.3d at 1010.

As a threshold matter, unfair prejudice does not substantially outweigh Gallegos'

statement's relevance. See Fed. R. Evid. 403. In the rule 403 context, "unfair prejudice" means

"'an undue tendency to suggest decision on an improper basis, commonly, though not necessarily,

an emotional one.'" United States v. Tan, 254 F.3d 1204, 1211 (10th Cir. 2001)(quoting Fed. R.

Evid. 403 advisory committee note). DeLeon contends that Gallegos' statement is unfairly

prejudicial, because: (i) the United States "has not provided the actual alleged statement, and has

provided very little information regarding its context"; and (ii) it is "facially prejudicial regarding

the central question in this case, whether DeLeon was involved in the murder of Mr. Castillo."

Response at 8. In the Reply, however, the United States provides the statement and more -- though

not much more -- context to the statement. See Reply at 1-2. The statement describes information

regarding how the alleged murder happened and who participated. See Clark Testimony at 2.

With the information the United States provides in its Reply, Gallegos' statement does not unfairly

prejudice DeLeon. The statement "does [no] more than damage the Defendant's position at trial."

United States v. Tan, 254 F.3d at 1211. Unfair prejudice requires more. See Fed. R. Evid. 403;

United States v. Archuleta, 737 F.3d 1287, 1293 (10th Cir. 2013).   Consequently, any unfair prejudice presented by Gallegos' proposed testimony does not substantially outweigh its probative value.   See Fed. R. Evid. 403.   Rule 403 does not, therefore, preclude the admission of Gallegos' statement and does not affect the question of admissibility as a statement against interest under rule 804.

First, a portion of Gallegos' proposed testimony is not admissible under rule 804(b)(3), because it includes a statement that is not self-inculpatory.   Statements that are not self-inculpatory are not admissible under rule 804.   See Williamson v. United States, 512 U.S. at 599-600; United States v. Smalls, 605 F.3d at 781.   The Tenth Circuit explains that "the rationale behind separating out non-self-inculpatory statements from self-inculpatory ones is based on credibility concerns due to a declarant's motivation for self-inculpation."   United States v. Lovato, 950 F.3d 1337, 1343 (10th Cir. 2020).   Although Gallegos' statement in the aggregate is self-inculpatory, it also implicates DeLeon.   See Clark Testimony at 2.   The Supreme Court rejects the view "that an entire narrative, including non-self-inculpatory parts[,] . . . may be admissible if it is in the aggregate self-inculpatory."   Williamson v. United States, 512 U.S. at 601.   If any of Gallegos' statement is to be admissible under rule 804, therefore, it must be without any reference to DeLeon.   See United States v. Smalls, 605 F.3d at 781 ("The most faithful reading of Rule 804(b)(3) is that it does not allow admission of non-self-inculpatory statements, even if they are made within a broader narrative that is generally self-inculpatory.")

Second, the rest of Gallegos' statement -- the portion that is self-inculpatory[5] -- are admissible under rule 804(b)(3), because it is sufficiently trustworthy.   See

[5]The self-inculpatory portions of the statement include: "He said that . . . that it was easy . . . it was easy for him to kill Pancho."

- 29 -

Fed. R. Evid. 804(b)(3)(B).  Although Gallegos is unavailable to testify, the United States shows

that a reasonable person in the declarant's position would have made the self-inculpatory

statements.  See Fed. R. Evid. 804(b)(3).  Gallegos is unavailable, because he plans to invoke his

Fifth Amendment right against self-incrimination.  See U.S. Const. amend. V; Reply at 2; United

States v. Crawford, 707 F.2d 447, 449 (10th Cir. 1983)("[N]either the prosecution nor the defense

may call a witness knowing that the witness will assert his Fifth Amendment privilege against self-

incrimination.").  As the Tenth Circuit notes, the rationale for rule 804(b)(3)'s hearsay exception

is reliability: "We may safely surmise that from time immemorial, only on the rarest occasion, if

ever, has one of sound mind -- even one of sound mind who is not particularly honest -- falsely

confessed a murder to an apparent acquaintance or friend."  United States v. Smalls, 605 F.3d at

781.  The Court previously has explained:

> Making that surmise is not safe, however, when the declarant makes a statement
> while in prison to someone who is apparently a fellow prison-gang member and not
> just an acquaintance or friend. While people in ordinary situations expose
> themselves to both social censure and criminal liability when they falsely confess
> to committing a crime, prison-gang members speaking to fellow members earn
> social benefits -- such as respect or an appearance of power -- when they make
> inculpatory claims. Further, law enforcement agents are unlikely to learn of such
> claims from the declarant's fellow prison-gang members, because prison-gang
> members face violent retaliation for collaborating with law enforcement.
> Consequently, a reasonable prison-gang member might make self-inculpatory
> statements even if those statements were not true. Accordingly, such statements are
> not typically admissible under rule 804(b)(3).

United States v. DeLeon, 287 F. Supp. 3d at 1256.  Here, however, Gallegos' statement about his

and DeLeon's alleged participation in Castillo's death is reliable, because, unlike the declarant --

Defendant Rudy Perez -- in United States v. DeLeon, 287 F. Supp. 3d at 1256, Gallegos had no

reason to show that he was not a government cooperator.  In United States v. DeLeon, 287 F. Supp.

3d at 1256, when Perez, the declarant, "made his statements to Cordova, prison-yard rumors

indicated, falsely, that Perez cooperated with the United States regarding the Molina murder."

United States v. DeLeon, 287 F. Supp. 3d at 1256.  Perez had an incentive to inculpate himself to "combat life-threatening prison-yard rumors."  United States v. DeLeon, 287 F. Supp. 3d at 1256. There is no indication Gallegos had a similar incentive.  See Motion at 1; Reply at 1-2; Clark Testimony at 1-2.  Gallegos has fought a majority of the charges against him, has experienced a seven-week trial, has been found guilty, and has been sentenced to life imprisonment; he has been a loyal SNM member, and there has not been a suggestion otherwise.  Unlike Perez, who was acquitted, Gallegos has not walked a fine line; he has lived by the SNM code and not snitched. See Jury Verdict at 3, filed March 12, 2018 (Doc. 1937).  There is, therefore, no reason to think that the incentives that undergird rule 804(b)(3)'s hearsay exception do not apply.  See Fed. R. Evid. 804(b)(3) advisory committee note ("The circumstantial guaranty of reliability for declarations against interest is the assumption that persons do not make statements which are damaging to themselves unless satisfied for good reason that they are true.").  Because, therefore, a reasonable person in Gallegos' position could have made his self-inculpatory statements, they are admissible as statements against interest under rule 804(b)(3).

In sum, the Court concludes that any self-inculpatory statements -- portions that inculpate Gallegos, the declarant, are admissible, and that any statement that inculpates DeLeon are not admissible under rule 804(b)(3).  With the inadmissible portions struck out, the statement reads: "He said that ~~Angel DeLeon held him [Castillo] down with the monkey grip or gorilla grip, something like that, and that~~ it was easy; ~~that Angel held him so tight that~~ it was easy for him [Gallegos] to kill Pancho."  See Clark Testimony at 2.

**IT IS ORDERED** that the Plaintiff United States' Motion in Limine Regarding Non-Testimonial Evidence and Request for Pre-Trial Ruling, filed August 31, 2021 (Doc. 3414), is granted in part and denied in part.

- 31 -

UNITED STATES DISTRICT JUDGE

*Counsel:*

Fred Federici
   Acting United States Attorney
United States Attorney's Office
Albuquerque, New Mexico

--and--

Maria Ysabel Armijo
Randy M. Castellano
Ryan Ellison
   Assistant United States Attorneys
United States Attorney's Office
Las Cruces, New Mexico

   *Attorneys for the Plaintiff*

Heather M. LeBlanc
Bailey, LeBlanc & Lane, P.C.
Albuquerque, New Mexico

--and--

Sarah M. Gorman
Law Offices of Robert D. Gorman
Albuquerque, New Mexico

   *Attorneys for Defendant Angel DeLeon*

Richard Sindel
Sindel, Sindel & Noble, P.C.
Clayton, Missouri

--and--

Brock Benjamin
Benjamin Law Firm
El Paso, Texas

*Attorneys for Defendant Joe Lawrence Gallegos*

Patrick J. Burke
Patrick J. Burke, P.C.
Denver, Colorado

--and--

Cori Ann Harbour-Valdez
The Harbour Law Firm, P.C.
El Paso, Texas

*Attorneys for Defendant Edward Troup*

Russell Dean Clark
Las Cruces, New Mexico

*Attorney for Defendant Leonard Lujan*

James A. Castle
Castle & Castle, P.C.
Denver, Colorado

--and--

Robert R. Cooper
Robert R. Cooper Law Firm
Albuquerque, New Mexico

*Attorneys for Defendant Billy Garcia*

Douglas E. Couleur
Douglas E. Couleur, P.A.
Santa Fe, New Mexico

*Attorney for Defendant Eugene Martinez*

Joseph E. Shattuck
Marco & Shattuck Law Firm
Albuquerque, New Mexico

--and--

Jeffrey C. Lahann
Las Cruces, New Mexico

*Attorneys for Defendant Allen Patterson*

Eduardo Solis
Law offices of Eduardo Solis
El Paso, Texas

--and--

John L. Granberg
Granberg Law Office
El Paso, Texas

--and--

Orlando Mondragon
The Law Office of Orlando Mondragon
El Paso, Texas

*Attorneys for Defendant Christopher Chavez*

Nathan D. Chambers
Nathan D. Chambers, Attorney at Law
Denver, Colorado

--and--

Noel Orquiz
Deming, New Mexico

*Attorneys for Defendant Javier Alonso*

Laura E. Udall
Cooper & Udall Law Offices
Tucson, Arizona

--and--

Scott Moran Davidson
Law Offices of Scott Moran Davidson
Albuquerque, New Mexico

--and--

Billy R. Blackburn
Billy Blackburn Law Office
Albuquerque, New Mexico

*Attorneys for Defendant Arturo Arnulfo Garcia*

Stephen E. Hosford
Stephen E. Hosford, P.C.
Arrey, New Mexico

--and--

Jerry Daniel Herrera
Albuquerque, New Mexico

*Attorneys for Defendant Benjamin Clark*

Pedro Pineda
Las Cruces, New Mexico

--and--

León Encinias
León Felipe Encinias, Attorney at Law
Albuquerque, New Mexico

*Attorneys for Defendant Ruben Hernandez*

Gary Mitchell
Mitchell Law Office
Ruidoso, New Mexico

*Attorney for Defendant Jerry Armenta*

Larry A. Hammond
Osborn Maledon, P.A.
Phoenix, Arizona

--and--

Margaret Strickland
McGraw & Strickland
Las Cruces, New Mexico

*Attorneys for Defendant Jerry Montoya*

Steven M. Potolsky
Jacksonville Beach, Florida

--and--

Santiago D. Hernandez
Law Office of Santiago D. Hernandez
El Paso, Texas

    *Attorneys for Defendant Mario Rodriguez*

Steven Lorenzo Almanza
Las Cruces, New Mexico

--and--

Ray Velarde
El Paso, Texas

    *Attorneys for Defendant Timothy Martinez*

Joe Spencer
El Paso, Texas

--and--

Mary Stillinger
El Paso, Texas

    *Attorneys for Defendant Mauricio Varela*

Lauren Noriega
The Noriega Law Firm
Los Angeles, California

--and--

Richard Jewkes
El Paso, Texas

--and--

Amy E. Jacks
Law Office of Amy E. Jacks
Los Angeles, California

    *Attorneys for Defendant Daniel Sanchez*

George A. Harrison
Las Cruces, New Mexico

--and--

Kimberly S. Bruselas-Benavidez
Albuquerque, New Mexico

     *Attorneys for Defendant Gerald Archuleta*

B.J. Crow
Crow Law Firm
Roswell, New Mexico

     *Attorney for Defendant Conrad Villegas*

Theresa M. Duncan
Duncan Earnest, LLC
Albuquerque, New Mexico

--and--

Marc M. Lowry
Rothstein Donatelli, LLP
Albuquerque, New Mexico

     *Attorneys for Defendant Anthony Ray Baca*

Charles J. McElhinney
CJM Law Firm
Las Cruces, New Mexico

     *Attorney for Defendant Robert Martinez*

Marcia J. Milner
Marcia J. Milner Attorney at Law
Las Cruces, New Mexico

     *Attorney for Defendant Roy Paul Martinez*

Christopher W. Adams
Adams & Bischoff, L.L.C.
Charleston, South Carolina

--and--

Amy Sirignano
Law Office of Amy Sirignano, P.C.
Albuquerque, New Mexico

*Attorneys for Defendant Christopher Garcia*

William R. Maynard
William R. Maynard Attorney at Law
El Paso, Texas

--and--

Carey Corlew Bhalla
Law Office of Carey C. Bhalla, LLC
Albuquerque, New Mexico

*Attorneys for Defendant Carlos Herrera*

Justine Fox-Young
Justine Fox-Young Attorney at Law
Albuquerque, New Mexico

--and--

Ryan J. Villa
Law Office of Ryan J. Villa
Albuquerque, New Mexico

*Attorneys for Defendant Rudy Perez*

Donavon A. Roberts
Donavon A. Roberts Attorney at Law
Albuquerque, New Mexico

--and--

Lisa Torraco
Lisa Torracco Attorney at Law
Albuquerque, New Mexico

*Attorneys for Defendant Andrew Gallegos*

Erlinda O. Johnson
Law Office of Erlinda Ocampo Johnson
Albuquerque, New Mexico

*Attorney for Defendant Santos Gonzalez*

Keith R. Romero
Keith R. Romero, Attorney and Counselor at Law
Albuquerque, New Mexico

*Attorney for Paul Rivera*

Angela Arellanes
Angela Arellanes Attorney at Law
Albuquerque, New Mexico

*Attorney for Defendant Shauna Gutierrez*

Jerry A. Walz
Alfred D. Creecy
Samuel Winder
Walz and Associates
Albuquerque, New Mexico

*Attorneys for Defendant Brandy Rodriguez*